## GEORGE W. EWING AND BETTIE SHIRLEY EWING.

### vs.

## HOWARD L. RIDER.

*Trespass q. c. f.: damage to growing crops; measure of—; evidence; value of balance of crop when matured. Appeals: reversals; harmless errors; joint judgment; reversed or affirmed as a whole.*

In an action for damages to growing crops, the measure of damages is the value of the crop at the time of its destruction; but in determining this amount, the evidence of the probable yield and value of the crop, had it reached maturity, and proof of the value of the part of the crop that was not destroyed, is admissible.                                         p. 155

A harmless error in the ruling of a trial court, presents no ground for a reversal.                                    p. 152

Recovery in an action for injuries to crops by trespass is limited to injuries occurring during the three years before the commencement of the suit, provided the defense of limitations is specially pleaded.                                  p. 152

It is the fundamental principle of the law of damages, that a person injured in his personal or property right shall be compensated therefor.                                  p. 155

A judgment against joint defendants is an entirety; and, on appeal, must be affirmed as to both, or reversed as to both; and if only one party is liable, the judgment can not be reversed as to him without a new trial, but must be remanded with a new trial for both.                                       p. 156

*Decided January 20th, 1915.*

Appeal from the Circuit Court for Harford County. (HARLAN, J.), to which Court the case had been removed from Baltimore County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Aubrey Pearre, Jr.,* (with whom were *Barton, Wilmer & Stewart* on the brief), for the appellants.

*Elmer J. Cook* (with whom was *Stevenson A. Williams* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This action was instituted in the Circuit Court for Baltimore County, on the 6th day of April, 1912, but upon removal the case was subsequently tried in the Circuit Court for Harford County and resulted in a verdict for the plaintiff for the sum of two hundred and fifty dollars.

The appellee was the plaintiff below, and he brought this suit against the defendants (husband and wife) to recover for injury and damage to, his growing and harvested crops of corn, wheat, hay and grass for the period of four or five years alleged to have been committed by the chickens, and other poultry, of the defendants, as set out in the plaintiff's *narr*.

The declaration contains three counts. The first is the usual count in trespass. The second alleges, that the defendants suffered and allowed, to run loose on the lands and crops of the plaintiff, where the same lies adjacent to the land of the defendants on the north side of the Dover Road in the 8th Election District of Baltimore County, large flocks of turkeys, chickens, ducks and geese, to the number of at least 150, and that said turkeys, chickens, ducks and geese did each year for the past four or five years destroy at least four or five acres of the growing crops of the plaintiff; that

the plaintiff repeatedly notified the defendants during the said four or five years to keep said turkeys, chickens, ducks and geese off the said lands of the plaintiff, but the defendants wholly neglected so to do, to the great injury and damage of the plaintiff.

The third count is identical·as the second, except it charges that large quantities of harvested crops while cut, and remaining in the fields of the plaintiff were each year for the past four or five years destroyed by the poultry of the defendants.

The plaintiff upon demand, filed a bill of particulars, setting out the damages claimed under each count of the declaration, specially naming the years in which the damage occurred and fixing it at the sum of $689.00.

The defendants for joint and several answers to the declaration pleaded, first, that they did not commit the wrong alleged, and, second, that the alleged cause of action and the damages for the years 1908 and 1909, did not accrue within three years before the suit. A trial was had upon a replication to these pleas, and from a judgment against both of the defendants, this appeal is taken.

The questions for our decision are presented upon two exceptions and were taken to the action of the trial Court, first, in its ruling upon the admissibility of evidence, and, second, upon the prayers.

The first exception requires but little discussion and there can be no difficulty in disposing of it.

The defendant, George W. Ewing, testified upon cross-examination. as set out in the exception, that he had no profession, no business occupation, but is an alleged farmer on 48 acres. He stated, he meant by this, he farmed the place for the benefit of the place, that the whole 48 acres is farmed, and that he keeps hunting horses. He was then asked, "How many do you keep?" The question was objected to by the defendants and the objection being overruled, the witness answered that he kept four such horses, and this constitutes the entire exception.

While it is difficult to perceive the relevancy of a question of this kind, to the issues of the case, it is clear, that the answer could not have injured the defendants.  The witness had testified without objectioon, that he kept hunting horses, and the reply that he kept four such horses, could have no prejudicial bearing upon the case.  Even if the ruling could be held to be error, it manifestly would be only harmless error, for which a reversal of the judgment would not be granted.

The second exception presents the rulings of the Court, upon the prayers.

The plaintiff offered no prayers, but the defendants presented thirteen.  Of these, the Court granted the seventh and eighth, and refused the rest.  The rulings upon the rejected prayers form the basis of this exception.

By the eighth granted prayer, the jury was properly instructed that under the issues joined there was no legally sufficient evidence, upon which the plaintiff could recover for any damage accruing to him prior to the 6th of April, 1909.

The suit was instituted on the 6th of April, 1912, and the Statute of Limitations, under the pleadings and evidence was a clear bar to the recovery of any damages, prior to the 6th of April, 1909, as directed in the eighth prayer.

The proposition contained in the second and fifth prayers of the defendants were fully covered by their eighth prayer, and no injury resulted from their rejection.

The third prayer prevented the recovery of any damages for the whole of the year 1909, if any, as against the defendant George W. Ewing, whereas limitations only applied up to April 6th, 1909, as set out in the eighth granted prayer.  The third prayer was therefore properly refused.

The first, fourth, sixth, ninth, tenth, eleventh, twelfth and thirteenth prayers offered on the part of the defendants were demurrers to the evidence and by them the Court, was in substance, asked to instruct the jury, first, that there was no

evidence in the case, legally sufficient to entitle the plaintiff to recover any damage whatever for the alleged injury to and destruction of the crops by the defendant's poultry, and, secondly, if any recovery at all, the plaintiff was limited to no more than nominal damages.

As the first prayer directly presented the question of the liability of Mrs. Ewing for the damages sought to be recovered, we will first consider the rulings of the Court below, upon this branch of the case.

We have carefully examined the evidence, set out in the record now before us, and are unable to agree with the ruling of the Court below in rejecting this prayer, but we are of opinion, that the jury should have been instructed under the pleadings and evidence in the case, there was no evidence legally sufficient to entitle the plaintiff to recover against her, and that a verdict must be in her favor.

There was no evidence legally sufficient to show that Mrs. Ewing owned any of the poultry, or was in any way, responsible for their care and custody, at the time of the alleged trespass.

The plaintiff testified, that Mr. Ewing exercised ownership over the farm, on which the poultry was kept and that he "requested him to keep his poultry up," told him they were doing him a great deal of damage. In a letter to him, he writes, "Probably, Mr. Ewing, you don't know your poultry is doing me a great deal of damage, but such is the fact and I am sure you will keep them up from this time on." He further testified that he wrote to him a number of times and asked him "to keep his chickens up" and stated to him, "I don't think I have a right to fence against your stock."

The testimony of Mr. Ewing is to the effect that he farmed the place and that the poultry belonged to him and not to Mrs. Ewing. He testified that in 1909 he kept 40 to 60 laying hens, and did not raise any additional chickens that year. In 1910 he expected that the number of chickens decreased some; in 1909 he kept probably on an average

about 30 to 40 chickens, but not over that; his first chicken house was built in 1910, and since then he has erected a portable chicken house. Originally he had two drakes and eight hen ducks, and has six or seven ducks now. In 1909 he had four turkeys all together, and in that year raised perhaps fifteen or twenty turkeys, keeping only a few and eating the rest; started with two geese and now he has three. Testified he has seven guineas, and since 1909 the guineas have decreased. That since 1909 turkeys have also decreased, and the greatest number of turkeys he ever had at one time was 12 hens and two gobblers.

He further testified that in the talk he had with the plaintiff in March, 1912, he told him he could not keep his chickens in and proposed to put up a fence on Rider's side of the road and that he would pay for half of it.

The witness McCann testified that he had directions from Mr. Ewing to keep the poultry up, and that Mr. Ewing owned the poultry.

But it is urged upon the part of the appellee, that the plaintiff's answer to the following question was sufficient to take the case to the jury, upon the question of the ownership of the poultry: "Q. Now, did you suffer any damage from poultry of the defendants; if so, please state to the jury what damage you suffered? A. Well, they did me a great deal of damage every year, and I notified Mr. Ewing in writing. I wrote no less than three letters."

While it is true, that the question suggests that it was the poultry of the defendants, we are unable to agree with the view, that the answer when considered as a whole can be regarded as of such probative force as tending to prove that the poultry was the property of both defendants. The witness also stated, in the same answer, that "I notified Mr. Ewing in writing," and it will be seen that this writing spoke of the poultry, as the property of Mr. Ewing.

The testimony here relied upon to prove the liability of Mrs. Ewing as one of the owners of the poultry, we think,

was entirely too vague, light and inconclusive, standing alone, to have taken the case to the jury as against her, and the defendant's first prayer should have been granted. *Cole* v. *Hebb,* 7 G. & J. 29; *Vogeler* v. *Devries,* 98 Md. 306; *Jones* v. *United Rwy. Co.,* 99 Md. 67.

This brings us to the second proposition in the case, namely, the liability of the defendant, George W. Ewing.

It is conceded in the appellant's brief, that under the evidence in this case the plaintiff was entitled to recover against the defendant, George W. Ewing, but not more than nominal damages, for the trespass committed.

Without stopping to discuss the testimony in detail, we think, there was sufficient evidence to require the Court to submit the case to the jury as to him, and there was no error in rejecting the defendant's prayers, which limited the plaintiff's recovery to nominal damages only.

There was evidence that both the growing and harvested crops of the plaintiff had been injured and damaged by the poultry of the defendant, during the years 1909, 1910 and 1911. There was evidence as to the fact of loss, the amount of damages and the value of the crops at the time of their injury and destruction, and it was upon this evidence and the other evidence in the case that the jury was justified in finding a verdict, if they determined the plaintiff was entitled to recover. In *A. & E. Enc. of Law,* Vol. 8 page 544, it is said, the fundamental principle of the law of damages is that the person injured in his person or property rights shall receive compensation therefor.

In 13 *Cyc.,* page 208, it is said, the measure of damages in an action for growing crops is the value at the time of their destruction; yet in determining this amount, evidence of the probable yield and the value of the crop, had it progressed to maturity, is admissible, and proof of the yield in that part of the field not destroyed, or of the value of matured crops of the variety destroyed, is admissible." *Sutherland on Damages,* Vol. 4, sec. 382; *A. & E. Enc. of Law,* Vol. 13.

709; *B. & O.* v. *Lamborn,* 12 Md. 257; *Carter* v. *Md. & Pa. R. Co.,* 112 Md. 599; *Balto. Bldg. Asso.* v. *Grant,* 41 Md. 560.

It follows from what we have said, that we find no reversible error in the action of the Court in rejecting the defendant's fourth, sixth, ninth, tenth, eleventh, twelfth and thirteenth prayers, but for the error indicated in its ruling on the first prayer, the judgment must be reversed.

As there was but one verdict and judgment in this case, it must be according to our practice, affirmed as a whole or reversed as a whole. *Hanley* v. *Donoghue,* 59 Md. 239; *Hanley* v. *Donoghue,* 116 U. S. 1; *Lumber Co.* v. *Israel,* 100 Md. 690.

In *Willner* v. *Silverman,* 109 Md. 360, it is said: "Although, in our opinion, the evidence, as set forth in the Record, is legally insufficient to entitle the plaintiff to recover as against Harris Silverman and Louis Silverman individually, or against the firm of Harris Silverman & Sons, yet, as the judgment is an entirety which cannot be affirmed as to some and reversed as to other defendants, we must, for error in granting the defendant's first prayer, simply reverse the judgment and remand the case for a new trial."

In *Firor* v. *Taylor,* 116 Md. 84, it was also said: "Although we are of the opinion that the third prayer offered by Saxton should have been granted, we will not reverse the judgment without awarding a new trial as to him, but as there was a joint judgment against the two, we will follow the practice of this Court in such cases and award a new trial as to both." both."

> *Judgment reversed and new trial awarded as to both defendants, the appellee to pay the costs.*