# MARION CHARLES

## vs.

# THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*City Bridge—Extinguishment of Lights—Evidence as to Other Accidents—Husband Driving Wife's Automobile—Agency.*

In an action on account of negligence in failing promptly to repair the electric lights upon a bridge, after they had been extinguished by a storm, as a result of which plaintiff's automobile was injured, it was proper to exclude evidence as to the number of accidents which had occurred at this same place, there being no evidence that the weather conditions were similar. p. 525

In an action for injury caused by plaintiff's automobile running into the wall of defendant's bridge as a result of the extinguishment of the lights by a storm, *held* that the exclusion of evidence offered by plaintiff as to the occurrence of an accident at the other end of the bridge on the same night was, if erroneous, harmless, there being no actionable negligence shown on the part of defendant. p. 526

The agency of the husband for the wife cannot be inferred merely from the relationship of husband and wife. p. 527

That a husband uses his wife's automobile, not for her business but in connection with his own occupation, does not constitute him her agent in so doing, so as to charge her with his negligence. p. 527

A short circuit of the electric current supplying lights on a bridge, resulting from unusual weather conditions, and causing their extinguishment, is not a latent defect. p. 527

A city which undertook to repair the lighting system of a bridge, impaired by unusual weather conditions, within thirty to forty minutes after that condition was made known, cannot be charged with any laxity in this respect. p. 528

*Decided May 13th, 1921.*

Appeal from the Baltimore City Court (DOBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*George Ross Veazey*, with whom were *Haman, Cook, Chesnut & Markell* on the brief, for the appellant.

*Allen A. Davis, Deputy City Solicitor*, with whom was *Roland R. Marchant, City Solicitor*, on the brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the court.

The 16th of January, 1920, was particularly stormy and severe. It snowed in the morning and this was followed by rain and sleet. Mrs. Thomas C. Charles was the owner of a Buick coupe. Her husband was a cigar salesman for a New York factory, his territory extending from Baltimore southward.

According to the declaration filed in this case on the morning of the day named the automobile, "operated by her husband at her direction and at her request," went from Washington, where she and her husband were living, to Camp Humphries and later in the day Mr. Charles ran the machine to Baltimore, entering the city over Edmondson Avenue, his purpose being to go to Walbrook. When he reached Poplar Grove Avenue on Edmondson Avenue he turned across Poplar Grove Avenue to proceed to his destination. The storm of the day had caused a congealing of the rain and sleet upon the wind shield of the plaintiff's machine. It was between a quarter after and half past seven when Mr. Charles, driving the machine, turned into Poplar Grove Avenue to proceed north to Walbrook. The night was one on which the range of vision was limited, making it difficult to distinguish objects along the way.

On Poplar Grove Avenue, where that avenue crosses the Western Maryland Railroad, there is a bridge which, in addition to the footways, has two drive ways of rather greater than the usual width, and separating the driveway from the foot walk are walls of concrete. In the center of the bridge there is a solid division, made apparently of concrete, with a large water main resting upon the summit of this central partition. The bridge is lighted by six arc lights, two of which are placed at the ends of each of the side enclosures and are white lights. Upon the central partition is one red light.

It is undisputed that at the time Mr. Charles approached this bridge he was running at a speed of not less than 20 miles per hour and that all of the lights were out. Keeping his machine as nearly as possible in the centre of Poplar Grove Avenue he failed to observe the bridge, although he was reasonably familiar with its existence from having repeatedly crossed it on foot. On this occasion, moving at the speed mentioned on a particularly dark evening, he saw no lights and his machine crashed into the central wall. Fortunately he suffered no personal injury, but the machine was quite badly wrecked, the repair bill amounting to between $700 and $800. It is to recover for this that the present suit was brought against the Mayor and City Council of Baltimore.

There are four bills of exception contained in the record, of which the last relates to the ruling of the trial court upon the prayers, the other three have reference to rulings made upon the testimony. The first is to the sustaining an objection to a question asked of the police officer who had patrolled the beat for seven and a half years, as to the number of accidents which had occurred at this same place. This action of the court was manifestly correct, there not having been any testimony given to show that the weather conditions which prevailed on the night of the 16th of January were the same as those at the time of other accidents which might have occurred at the same place. The second bill of exceptions came upon the court's sustaining an objection to a question put to the same witness as to whether an accident had occurred at

the other end of the same bridge on the same night. This might, under certain aspects, have constituted error, but in the view which this Court takes of the case, if error it was, it was an immaterial error which could in nowise have affected the result.

The third exception was to a question to the same witness as to whether or not an accident had occurred at the south end of the bridge on nights other than this particular night. The objection to this was sustained and is fully covered by what has already been said with regard to the first exception. One or two additional facts are proper to be mentioned.

There is no dispute that the lights on the bridge on this particular night, as Mr. Charles approached the northern end of the bridge, were all of them out, and it is testified to without contradiction that the leaving of the bridge in darkness was due to the short circuiting of the electric current which supplied these lights. That short circuit is fully explained by the witness Charles F. Mosher, as having been caused by the intense cold weather bursting the conduit underneath the bridge, thereby bringing water in contact with the wire and occasioning the short circuit.

The first notice that the city had of the fact that the lights were not burning was at 6.40 in the evening, when word of the condition reached the electrical inspector of this district. A second notice was given by officer Moog, who first noticed the condition at 7 o'clock on the evening in question, and who immediately notified the station-house with which he was connected.

At half past seven Mr. Mosher, the inspector, was on the ground making an effort to repair the lights. There was thus an interval of but thirty to forty minutes between the time when the city received notification of the condition and its endeavor to make the necessary repairs to the lights, and it was during this interval that Mr. Charles crashed into the bridge and wrecked the machine in which he was driving.

There are a number of questions of law which are raised in the case by the several prayers submitted, and it is the ruling

of the court on these prayers which forms the fourth exception.

Many cases were cited in the brief of the appellant, but the law which must control has been so clearly enunciated in previous opinions of this Court, that it is not deemed necessary to review all of the adjudicated cases in detail.

The plaintiff offered three prayers and the defendant four, and the trial court refused all of those of the plaintiff and granted all which were presented by the defendant. The plaintiff's first prayer deals with the question of the agency of Mr. Charles for his wife, and was properly rejected.

The declaration in the case alleges that Mr. Charles was operating the machine at her "direction and at her request" but there is nothing in the evidence bearing upon the question of agency nor can the agency be inferred merely from the relationship of husband and wife.

So far as the evidence discloses, Mr. Charles was using the machine, not for any business of his wife, but in connection with his own occupation, and the use of it by him was therefore merely a permissive use.

In many cases it has been held that such permissive use does not constitute an agency. The nearest approach to the question among the reported cases of this State is that of *Debelius* v. *Benson,* 129 Md. 697; and while the point was not expressly decided in that case, the general trend of the opinion was in accord with the adjudicated cases elsewhere.

The second and third prayers of the plaintiff both proceed upon the theory of a latent defect in the wiring of the lights upon the bridge. It is well settled that it is the duty of a municipality to keep its public streets and highways in a safe and proper condition for public travel, and if the municipality fails in this duty and a person is injured as a result thereof, without negligence on his part, the municipality is responsible for the same in damages. *Biggs* v. *Baltimore,* 129 Md. 686; *Baltimore* v. *Bassett,* 132 Md. 427. It cannot be said in this case that the short circuit of the electric current upon the night in question, which resulted from the

unusual severe winter weather, was a latent defect and, since each of these prayers was based upon the supposed existence of such latent defect, the action of the trial court in refusing them was entirely proper.

The first, second and third prayers of the defendant were upon the theory that no negligence had been proven, attributable to the city; the fourth prayer was upon the theory of contributory negligence on the part of Mr. Charles who was driving the machine.

It is impossible for this Court to say wherein the Mayor and City Council of Baltimore was guilty of any act, which would properly be construed as negligence upon its part. It was not a case when from a long lapse of time negligence was to be imputed and, when the city undertook to remedy the defect in lighting, which had been caused by unusual weather conditions, within thirty to forty minutes after that condition was made known, it cannot be charged with any laxity in this respect. These three prayers are to some extent duplications of one another, but the granting of any one of them must have had the same result of a verdict in favor of the city, and no reversible error can be attributed to the trial court because of its rulings on these prayers. There being thus no actionable primary negligence shown on the part of the city, it becomes unnecessary to discuss the question of contributory negligence, and the judgment appealed from will therefore be affirmed.

*Judgment affirmed, with costs.*