# E. RAY MYERS ET AL.

### vs.

# CLARENCE E. SHIPLEY.

*Appeal—Partial Reversal—Injury by Automobile—Liability of Parent—Negligence of Child.*

Since the passage of Acts 1920, ch. 229, a joint judgment against two or more defendants may be affirmed as to one or more of them and reversed as to the other or others.     p. 382

The owner of an automobile, provided by him for the use of his family, is not liable to one injured by the negligence of his son, who was using it wholly for his own purposes and not for the purposes of such owner, and that the son had the father's special or general permission to use the car is immaterial in this regard.                                              pp. 383-392

To hold one liable for the tortious act of another, not committed by him or his order, the adoption of the other's act must be explicit and with full knowledge of the facts.     p. 393

If one ratifies an act of his agent before he knows the material facts, he may afterwards disaffirm.                    p. 394

Where the uncontradicted evidence shows that the person in possession of a vehicle or machine was not, at the time of an accident caused by it, the servant or agent of its owner, there can be no recovery against the owner.                    p. 394

*Decided January 25th, 1922.*

Appeal from the Circuit Court for Carroll County (Moss, J.)).

Action by Clarence E. Shipley against E. Ray Myers and Howard E. Myers. From a judgment for plaintiff for the sum of five hundred dollars, defendants appeal. Affirmed in part and reversed in part.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*Francis Neal Parke,* with whom were *James A. C. Bond* and *Edward O. Weant* on the brief, for the appellants.

*Guy W. Steele,* with whom was *Ivan L. Hoff* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment obtained by the appellee against Howard E. Myers, the owner of an automobile, and E. Ray Myers, his adult son, who was driving it when an accident occurred, due to the alleged negligence of the latter. This suit was for the destruction of the plaintiff's buggy, injury to his horse, and for personal injuries to himself, and the loss of the services of his wife and expenses incurred by him for injuries sustained by her. Another suit by Mrs. Shipley resulted in a judgment for her, and the parties agreed that the record in that case should not be transmitted to this Court, but that the judgment therein rendered should abide the result of this appeal. In addition to the usual allegations in such cases, it is alleged "that thereafter the defendant, Howard E. Myers, adopted and ratified said act, reckless, careless and negligent operation of said automobile by his said ———————— or son, the defendant E. Ray Myers, whereby the plaintiff and his wife were damaged and injured as aforesaid, and assumed liability and responsibility for it."

The only bill of exceptions in the record is one presenting the rulings of the court in rejecting the defendant's first and first and one-half prayers, but the appellants' attorneys in their brief concede that the first and a half prayer was bad under what we said in *Firor* v. *Taylor,* 116 Md. 69, 84. The only one for our consideration, therefore, is the first, which is, "That under the pleadings there is no legally sufficient evidence from which the jury may find that the defendant, Howard E. Myers, was responsible in any way for the injury

on account of which recovery is sought in this suit, and the verdict of the jury must be for the said Howard E. Myers." Apparently the appellants were under the impression, by reason of what was said and done in *Firor* v. *Taylor,* 116 Md. 69, 84, and *Ewing* v. *Rider,* 125 Md. 149, 156, that, as there was a joint judgment against the two, there must be an affirmance or reversal of that joint judgment under the first prayer; but, since those decisions, the Act of 1920, chapter 229, adding section 22B to article 5 of the Code, was passed, providing that "if, on appeal, it shall appear to the Court of Appeals that said judgment should be affirmed, as to all said defendants, or should be reversed as to all said defendants, or should be affirmed as to one or more of said defendants and should be reversed as to one or more of said defendants, then the said Court of Appeals may so direct." As there is no valid exception in favor of E. Ray Myers, the only question, therefore, before us, is whether the judgment against Howard E. Myers should be affirmed or reversed.

Howard E. Myers owned the car which is alleged to have caused the injuries complained of. He was called as a witness by the plaintiff, and it appears in his testimony that he had six children, E. Ray Myers being the second one. He got this car in April or May, 1920, and had one before, which he traded and got this one. He was asked: "Q. Is this car used for your family? A. Yes, sir. Q. Who had been running the car, your son? A. Yes, sir; both of them; the boy next to him and the older boy before he left home. Q. All of them had a right to use it for family use? A. Yes, sir." On cross-examination he testified that his son, Ray, was twenty-two years old, that he employed him on the farm, and paid him wages by the month, and he was so employed at the time of the accident. He said, if the boys were out and wanted gasoline or oil, they got it, and if anything happens like spark plugs or something like that they got them and pay for them. He said he did not know anything about the accident at the time it happened, that he did not know anything about his son taking the car out that

night, or for what purposes he took it; that the night of the accident the car was at a garage in Westminster, where it had been for a day or two. He was asked: "Q. What was it there for? A. For some little repairs, I don't know. I think maybe battery trouble. I don't pay much attention to the car myself." He said he did not know anything about his son going for the car that night, and he had not told him to go. He was asked by an attorney for the plaintiff: "Q. Of course, Mr. Myers, your son, as you have stated, had perfect authority to get that car that night and use it? A. If it was done, he had. I didn't tell him nothing about it. Q. You didn't tell him not to do it? A. No, sir." Upon being asked by his attorney: "Q. It was not for any purpose of yours that he would go down the road to an oyster supper? A. I wouldn't think so, he didn't bring me any oysters back."

The defendant E. Ray Myers said the automobile had been at the garage a day or two, that he went to town that night on the train (they lived three or four miles from Westminster), and did not have any conversation with his father in reference to the automobile, that they had said at the garage that they expected it would be finished and he went for it; that Earl Shaffer got in the car with him and they were going to an oyster supper at a village called Gamber. Earl Shaffer corroborated him. It is a five-passenger Paige car, and they expected to get two girls to go with them, but had not when the accident happened.

We come now to the question left unanswered in the case of *Whitelock* v. *Dennis,* 139 Md. 557, decided at the October term, whether the owner of an automobile provided by him for the use of his family is liable to a party injured by the negligence of his son, when the car was being used wholly for purposes of the son, and not for those of the owner. In the case of *Whitelock* v. *Dennis,* we said: "We are not willing to commit ourselves to the doctrine that an owner of an automobile is responsible for injuries sustained by a third

party by reason of the negligence of a minor son in running the car, if the car was, at the time, being used by the son for his own purposes and not for those of his father, even if he had the permission, express or implied, of his father, so to use the car." And we said that the defendant's third prayer, which in substance announced that rule, should have been granted. Of course, we were careful to confine the rule to such facts as we then had before us, which did not show that the use of the car by the son necessarily or probably involved unusual danger, and there was no evidence of his being reckless or incompetent to drive a car. That son was only eighteen years of age, but he had a State license to operate a car. As there was a conflict of evidence in that case as to whether it was being used for the father, we held that the case should go to the jury.

There is an unfortunate conflict in the decisions bearing on this subject. Many of them have been made by courts of high standing and have been supported by forcible and exceptionally able opinions, presenting the views of the respective sides, if we may use that term, of the controversy. We cannot but be impressed, however, with the conviction that some of them have disregarded principles of law applicable to the relations of principal and agent, and master and servant, which, before the days of automobiles, and especially before they had become so numerous on our streets and other highways, were supposed to be as firmly fixed as any principles known to the common law.

There have been some attempts to separate the decisions of the courts in the different states into two main classes, those holding the owners of cars purchased for the uses of their families responsible for injuries sustained by the negligent driving of their sons, or other members of their families, and those holding that they were not liable, but as many of them depend upon the facts of the particular cases, it is necessary to examine them critically in order to ascertain how they can be properly classified. In this case, as

an adult son, living with his father, was driving the car for his own purposes, without the knowledge of his father that he was using it on that occasion, but undoubtedly with implied authority so to use it, we will refer to such of the authorities as may be of use in support of the position we will announce for this Court. One of the fullest discussions we have found on the subject is in the case of *Hays* v. *Hogan,* 273 Mo. 1, Ann. Cas. 1918 E, 1127. There the case of *Daily* v. *Maxwell,* 152 Mo. App. 415, which is often cited in support of the view that the owner is liable, was expressly overruled, as was *Hays* v. *Hogan,* 180 Mo. App. 237. The Supreme Court of Missouri held that "the mere ownership of an automobile purchased by a father for the use and pleasure of himself and family does not render him liable in damages to a third person for injuries sustained thereby through the negligence of his minor son while operating the car on a public highway, in furtherance of his own business or pleasure; and the fact that he had his father's special or general permission so to use the car is wholly immaterial." Of course, the fact that the son is an adult does not lessen, but sometimes may strengthen, the reasons for the rule. In *Parker* v. *Wilson,* 179 Ala. 361, 43 L. R. A. N. S. 87, an eighteen-year-old son took his father's automobile for his own uses without the father's knowledge, but by his implied general permission, and it was held that the son was not the agent of the father, and the latter was not liable for the negligence of the former in operating the car. The court said, the doctrine that the pleasure of the family is the business of the father "has no firm foundation in reason or common sense. In theory it overlooks well settled principles of law; in practice it would interdict the father's generosity, and his reasonable care for the pleasure or even the well-being of his children, by imposing a universal responsibility for their acts." In *Spence* v. *Fisher,* 184 Cal. 209, 193 Pac. 255, it was said, in reference to the theory that the son was

engaged in the business of his father in such cases: "Of course, it is true that every good father makes it his 'business' in a certain sense of that word, to furnish, so far as he can, for use by the members of his family, all those things that will contribute to their convenience and pleasure. But to our minds his doing this cannot, by any sound reasoning, warrant a conclusion that, in the subsequent use of the thing by a member of the family solely for his own convenience or pleasure, while engaged exclusively on a mission of his own, such members of the family is engaged on the father's business or in any way acting as his agent or servant." That case overruled *Crittenden* v. *Murphy,* 36 Cal. App. 803.

The case of *Doran* v. *Thomsen,* 76 N. J. L. 754, is a leading one in favor of the doctrine that the father is not responsible for the negligence of a son or daughter while using the car for his or her own purposes, and not those of the father, although used with the permission of the father. The court said that the mere fact of the relation of parent and child would not make the child the servant of the parent, and held that his liability in such case depended upon the relation of master and servant. It said: "She was not even driving other members of the family. She was using the machine as a means of recreation and pleasure for herself and her own friends, and it would seem impossible to draw the conclusion that she could be regarded as the agent or servant of her father upon that occasion." It then went on to say that assuming the relation of master and servant existed generally between the father and daughter, yet it did not appear that on the occasion in question she was acting as such servant within the scope of her employment, and repeated the well-known doctrine that the master was "not responsible if the negligence was committed by the servant when engaged in some private matter of his own." It is contended that the doctrine of that case has been very much modified, if not reversed, by that court in *Missell* v. *Hays,* 86 N. J. L. 348. In that case Hays had purchased a car for the general uses of his family, and it was for that pur-

pose habitually operated by the owner and his two sons, sometimes with, and sometimes without, his express consent and direction. At the time of the accident, one of the sons was driving the car, and in it were the wife and daughter of the father and two guests. The court said that in the *Doran case,* "No other members of the father's family were in the car. The only element in the case tending to show that the daughter was acting as the servant of the father was the bare fact that the father owned the automobile, which, being personal property, was presumably, in the absence of evidence to the contrary, in his possession or the possession of his servant, at the time of the accident; possession being the badge of ownership of personal property. This presumption, however, in that case was overcome by the uncontradicted proof that in fact the automobile was not in the possession of the owner or his servant, but that, on the contrary, it was in the possession of a third party (who happened to be his daughter), who was using it for her own pleasure and the pleasure of her friends, and not upon the owner's business." The court then went on to say that in the *Hayes case* there were the father's immediate family and their guests; that "this fact constituted affirmative evidence that the automobile was being used in the father's affairs or business. It was within the scope of the father's business to furnish his wife and daughter, who were living with him, as members of his immediate family, with outdoor recreation, just the same as it was his business to furnish them with food and clothing, or to minister to their health in other ways. It cannot be said, therefore, that in this case there was no evidence of possession, except a mere presumption, which could be overcome by proof of inconsistent facts. Here there was affirmative proof of the fact of possession, quite apart from any presumption." The court said that there was also evidence that the son invited his mother and sister to take a ride as his guests on a trip which he was taking for his own pleasure or business, and that they were doing so as such and not as members of his

father's family, and hence it became a question for the jury
to decide, and added: "We think the question was one of
fact and that it was properly submitted to the jury," but
the case of *Doran* v. *Thomsen* was not overruled but ex-
pressly affirmed.

There seems to be some misunderstanding about the doc-
trine adopted in Maine. In *Farnham* v. *Clifford,* 116 Me.
299, the court did not hold that the father was responsible
because he bought the machine for the pleasure of himself
and family, but the motion for a new trial which was then
being reviewed was distinctly overruled on the ground that
after the accident, with full knowledge of the facts, the father
admitted his liability, and when he went upon the stand he
did not deny that he had so admitted and did not contradict
or explain the statement alleged to have been made by him,
but allowed it to pass as true and unchallenged. The court
said that that authorized the jury to find that he knowingly
made the admission and that his admission was true. In
*Farnum* v. *Clifford,* 118 Me. 145, the court said that an in-
struction was without error which said: "Liability cannot
be cast upon the defendant in this case because he owned the
car, or because the driver at the time of the accident was his
son, or because he permitted his son to use the car. There
must be the further relation of master and servant between
them, and the son at the time of the accident must have been
using the car in the business of the defendant." In *Pratt* v.
*Cloutier,* 119 Me. 203, 110 Atl. 353, 10 A. L. R. 1434, it
was held, quoting for convenience from the syllabus in the
*Atlantic Reporter,* "A father who furnishes an automobile
for the pleasure of his family, and allows his minor son to
drive when he desires, is not responsible to a third person for
the son's negligence while using the car solely for his own
pleasure." That case reviewed a number of others and
pointed out that the citation of *Farnham* v. *Clifford,* 116
Me. 299, by the court in *Johnson* v. *Smith,* 143 Minn. 350,
in support of the Minnesota doctrine, was not justified. It

also cited the case of *Maddox* v. *Brown*, 71 Me. 432, 36 A.
R. 336, to show that in Maine the doctrine then being ap-
plied to automobiles was announced in the case of a minor
son taking his father's horse and carriage, which he had been
allowed to use without restriction. In the case of *Van Blari-
com* v. *Dodgson*, 220 N. Y. 111, the Court of Appeals of New
York, in speaking of the doctrine that the father is liable in
such cases, says: "This is an advanced proposition in the law
of principal and agent, and the question which it presents
really resolves itself into the one whether, as a matter of com-
mon sense and practical experience, we ought to say that a
parent who maintains some article for family use and occa-
sionally permits a capable son to use it for his individual con-
venience, ought to be regarded as having undertaken the oc-
cupation of entertaining the latter and to have made him his
agent in this business, although the act being done is solely
for the benefit of the son. That really is about all there is
to the question." After saying that an affirmative answer
had been given by the courts of some states (citing *Birch* v.
*Abercrombie*, 74 Wash. 486; *Davis* v. *Littlefield*, 97 S. C.
171; *Griffin* v. *Russell*, 144 Ga. 275, L. R. A. 1916 F. 216,
Ann. Cas. 1917 D. 994; and two cases of Missouri Appeals
which have been overruled by the Supreme Court of that
state) that court said: "But it seems to us that such a theory
is more illusory than substantial, and that it would be far-
fetched to hold that a father should become liable as principal
every time he permitted a capable child to use for his per-
sonal convenience, some article primarily kept for family
use. That certainly would introduce into the family relation-
ship, a new rule of conduct which, so far as we are aware, has
never been applied to other articles than an automobile."

But we will extend this opinion to an unreasonable length
if we continue to quote from the cases. We will content our-
selves by referring to some others maintaining the views of
those referred to above, such as: *Aiken* v. *Page*, 287 Ill. 420,
5 A. L. R. 216; *Smith* v. *Weaver*, —— Ind. App. ——, 124

N. E. 503; *Reynolds* v. *Buck,* 127 Ia. 601, 103 N. W. 946; *Knight* v. *Cossitt,* 102 Kan. 764; *Watkins* v. *Clark,* 103 Kan. 629; *Stafford* v. *Noble,* 105 Kan. 219; *Weiner* v. *Mairs,* 234 Mass. 156; *Woods* v. *Clements,* 113 Miss. 720; *Same* v. *Same,* 114 Miss. 301; *Linville* v. *Nissen,* 162 N. C. 95; *Heissenbuttel* v. *Meagher,* 162 App. Div. 752, 147 N. Y. Supp. 1087; *Elms* v. *Flick,* 100 Ohio, St. 186; *McFarlane* v. *Winters,* 47 Utah, 598, L. R. A. 1916 D. 618; *Cohen* v. *Meador,* 119 Va. 429; *Blair* v. *Broadwater,* 121 Va. 301.

There are quite a number of cases which are generally classed with the courts taking the view that the owner is liable, under the circumstances referred to above, in which the child was driving the car with or for other members of the family. It was said in *Pratt* v. *Cloutier, supra,* that "Few, indeed, of the many cases cited, will be found to go so far as to hold a father liable when a son, alone in the father's car, seeking only his own pleasure and intertainment, and while so engaged injuries a third party. The reason for finding the father liable in the cases so holding, is usually founded on the fact that one other member of the family, at least, accompanied the driver, thus raising the questions which in each case have gone to the jury." The appellee contends that there can be no valid distinction made between such cases and those in which a son was driving wholly for his own purposes, without having any other member of the family with him, but courts of standing have made such distinctions, as shown by the cases, and when they have done so they have generally held that when there is another member of the family being driven by one, it is for the jury to determine whether the driver was acting for himself alone or for his father. In this case it is shown that there was no other member of the family with the son, and hence we need not discuss the effect, if any, of such difference in the facts. The appellants state in their brief that *Benton* v. *Regeser,* 20 Ariz. 273; *Lewis* v. *State,* 52 Mont. 300; *Boes* v. *Howell,* 24 N. Mex. 142; *McNeal* v. *McKane,* 33 Okla. 449; *Davis*

v. *Littlefield,* 97 S. C. 171 and *Denison* v. *McNorton,* 228
Fed. 401, were cases in which the child was driving with or
for other members of the family, but we have not thought it
necessary to examine to see whether those courts have passed
on the question when the driver was the only member of the
family in the car. The states of Kentucky, Minnesota, Ten-
nessee, and Washington have not made such distinctions, and
hence it must be conceded that there is conflict between the
authorities—although some cases in several of those states
would seem to be more in favor of the appellant's contention
than that of the appellee.. The cases of *King* v. *Smythe,* 140
Tenn. 217, and *Birch* v. *Abercrombie, supra,* have perhaps
presented the views of those holding the father liable as forci-
bly as any of the others, and seem to be leading cases. In
chapter 26 of *Berry on Automobiles* (3rd Ed.), beginning
on page 1072, section 1160, and *Huddy on Automobiles* (5th
ed.), beginning with section 656 on page 849 and continuing
to section 662 on page 863, most of the cases are cited in the
notes, but it would take a good-sized volume to discuss all of
them fully and point out wherein they differ with other deci-
sions. In Michigan, where the courts were also in accord
with the view we have announced as to this question, the rule
has been changed by statute, which would seem to us to be a
far preferable way, if it be deemed best to adopt the other
rule, rather than to run counter to well established principles
in reference to master and servant and principal and agent,
which cannot stand in their integrity, if some of the auto-
mobile cases we have found are to be followed. It is said in
*Hatter* v. *Dodge Brothers,* 202 Mich. 97: "As the law now
stands it is not a pre-requisite for recovery to prove that the
motor vehicle causing an injury was being operated in the
business of the owner, for his use and enjoyment, or by his
servant or employee." If many legislatures adopt such a
rule as that, it will probably be because so many automobil-
ists seem to forget at times that they do not have the right to
the exclusive use of the highways, but it would be better to

pass and enforce stricter laws in the use of the highways than simply provide for recovery of damages, which cannot restore life or always compensate for injury.

While our own decisions have not hitherto definitely settled the main question herein involved, they have approached it in some respects, and they place us more in line with the courts which have held that, under such facts as we have in this case, the plaintiff cannot recover. The opinion in *Whitelock* v. *Dennis* (139 Md. 557), filed December 5th, 1921, is the last one on the general subject, and we need not dwell on *Symington* v. *Sipes,* 121 Md. 313, and *State, use of Debelius* v. *Benson,* 129 Md. 693, therein referred to at some length. It may be well to say that in *Buckey* v. *White,* 137 Md. 124, we said enough to show that but for the technical reason therein stated why we could not do so, we would have reversed that judgment on the ground that there was not enough in the record to show that the father was liable, although it was shown that the car was purchased by him and used in his business and from time to time for the convenience of his family. It was being driven by his son, Earl Buckey, who was then about twenty-two or twenty-three years of age, lived with his father, and assisted him in his business. At the time of the accident, the son, who had the privilege of using the car whenever he wished, was driving friends to a dance. In *Charles* v. *Baltimore,* 138 Md. 523, we said agency cannot be inferred merely from the relationship of husband and wife—that Mr. Charles was using the machine (which belonged to his wife) not for any business of his wife, but in connection with his own occupation, and the use of it was merely a permissive use.

There can be no difficulty about the question of the alleged adoption of the act of E. Ray Myers by Howard E. Myers. The general rule is thus stated in 1 *Am. & Eng. Enc.* (2nd ed.), 1185: "The doctrine of ratification applies as well to torts when done to the use or for the benefit of him who subsequently adopts them, as to matters of contract. * * * But to hold one responsible for the tortious act of another not

committed by him or by his order, the adoption must be explicit and with a full knowledge of the facts." In addition to the fact that the alleged wrong was not done in the interest, or for the use or benefit of the father, as is required to make him liable (1 *Cooley, Torts* (3rd Ed.), 214, 217; 1 *Poe, Pl. & Pr.* 481, 525; *Hammond* v. *Dubois,* 131 Md. 116, 154), the alleged ratification was far from being explicit, and with a full knowledge of the facts. The plaintiff testified that the next morning after the accident, in the presence of his son, Howard E. Myers said to him that "if his son was to blame, he was willing to 'daddy' the blame." Raymond Dayhoff testified that the day after the accident, he said if his son had done any damage to the plaintiff's *"automobile"* he would stand all expenses or damages. As the plaintiff had no automobile in the accident there is manifestly some mistake in that testimony. Carroll Owings said he told him, "if his boy did it he was willing to 'daddy' it, and if he didn't do it he don't feel that he ought to do it." It could hardly be said that there was an explicit adoption of the act of the son, and the father showed by his testimony that he did not have a full knowledge of the facts when he said what he did. He went on the stand in rebuttal and denied that he then said what Mr. Dayhoff testified to, and in answer to what he said to the plaintiff, he testified: "I told Mr. Shipley before I left home, I told him at home, that if the boys were the cause of this, I would stand by them. After I went out there I found there was another car and I told Mr. Shipley I wouldn't daddy the other fellow's dirt."

There is no contradiction of that, and if a person ratifies an act of his agent before he knows the material facts, he may afterwards disaffirm. *Adams Express Co.* v. *Trego,* 35 Md. 47; *Bannon* v. *Warfield,* 42 Md. 22. Mr. Myers did what the court said in *Farnham* v. *Clifford,* 116 Me. 299, the defendant in that case should have done, and he could not have been held liable on the ground that he had made such qualified statements as it is claimed he did make.

We are of the opinion that the defendant's first prayer should have been granted. We said in *Whitelock* v. *Dennis, supra,* the presumption arising from such facts as we referred to in *Stewart Taxi Service Co.* v. *Roy,* 127 Md. 70, can be rebutted, and we referred to the fact that in *Symington* v. *Sipes, supra,* and *State, use Debelius* v. *Benson, supra,* we had approved prayers which instructed verdicts for defendants, on the ground that the drivers were not acting within the scope of their employments, notwithstanding the presumption referred to. We will only add to that what was said by JUDGE THOMAS, in speaking for the Court, in *Dearholt Co.* v. *Merritt,* 133 Md. 323, 329. After referring to *Vonderhorst Brewing Co.* v. *Amrhine,* 98 Md. 406; *Geiselman* v. *Schmidt,* 106 Md. 580; *Stewart Taxi Co.* v. *Getz,* 118 Md. 171; *Symington* v. *Sipes, supra; Debelius* v. *Benson, supra; National Mech. Bank* v. *Nat. Bank of Balto.,* 36 Md. 5, he said: "The effect of the Maryland cases referred to is that where the evidence in the case, whether produced by the plaintiff or by the defendant, is uncontradicted, and clearly shows that the person in possession of the vehicle or machine was not, at the time of the accident, the servant or agent of the owner, there can be no recovery against the owner, and that the case should be withdrawn from the jury." He then went on to show that *Stewart Taxi Service Co.* v. *Roy,* 127 Md. 70, did not establish a contrary rule.

It follows that the judgment against Howard E. Myers must be reversed and, as there could be no recovery, a new trial will not be awarded, but, for reasons stated above, the judgment against E. Ray Myers must be affirmed.

> *Judgment against E. Ray Myers affirmed, and judgment against Howard E. Myers reversed, without a new trial, one-half of the costs above and below to be paid by E. Ray Myers and the other half by the appellee.*