## WILLIAMS *v.* WHEELER, ET AL.

[No. 360, September Term, 1967.]

*Decided January 14, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*William A. Ehrmantraut,* with whom were *Edward C. Donahue, John J. Mitchell* and *James P. Gleason* on the brief, for appellant.

*Thomas B. Yewell* for appellees.

BARNES, J., delivered the opinion of the Court.

This case involves an action brought by the appellees, Elmore Bernard Wheeler, Evelyn Dolores Wheeler, Dolores Ann Wheeler, Steven Mark Wheeler, and Bernard John Wheeler (Wheelers) all of whom were occupants of an automobile which was involved in an accident with another automobile owned by the appellant Mose Zell Williams (Williams) and operated by his stepson, Willie Brady (Brady). On August 13, 1966 the Wheeler automobile, which was owned and being operated by the appellee, Elmore Bernard Wheeler, was being driven in a

southerly direction on Maryland Route No. 5 in Prince George's County, and was struck by the Williams vehicle which was traveling in the opposite direction on Route No. 5. Brady was operating the Williams vehicle, and the appellant Williams was a passenger in the vehicle, apparently asleep on the back seat.

At the trial below, the Circuit Court for Prince George's County (Meloy, J.) denied the defendant Williams' motion for a directed verdict, and the jury returned a verdict against both defendants, Brady and Williams. After denying Williams' motion for judgment n.o.v., on September 20, 1967, the court entered a judgment for the plaintiffs against both defendants. From this judgment, the appellant Williams brings this timely appeal. The defendant Brady did not appeal.

The only evidence concerning the circumstances leading up to the accident was the testimony of the two defendants, Williams and Brady, *both of whom were called as adverse witnesses by the plaintiffs*. Brady testified that early in the afternoon of August 13, 1966, he and his stepfather, Williams, drove in Williams' taxicab to a "beer joint" in Waldorf where they drank beer and played slot machines for the duration of the afternoon. Williams left the bar first, and went to sleep in the back seat of his car. Brady stated that when he left the bar, he was unable to awaken his stepfather, and, as he (Brady) had seen Williams put the keys under the sun visor, he took the keys and proceeded to drive the car home. The accident at issue here occurred in the course of that trip.

Williams' testimony did not differ in any material respect. Both of the defendants maintained that neither had had more than 3 or 4 beers, and that Williams was merely sleeping in the car and was not drunk. Both witnesses also testified that Brady did not then or ever have permission from Williams to drive his car, and that in the twelve years during which Brady lived with Williams, he never drove any automobile belonging to Williams. It is undisputed that Brady did not have a driver's license.

In considering the propriety of Judge Meloy's rulings on the appellant's motion for a directed verdict and a judgment *n.o.v.*, it is necessary, at the outset, to consider the essential factor that all of that portion of the plaintiffs' case relating to the circum-

stances leading up to the actual occurrence of the accident, came from the testimony of the defendants.

Art. 35 § 9 of the Code provides:

> "Adverse parties may be called; interrogated and impeached.
>
> "In any suit, action or proceeding at law or in equity in any court of this State, any party may call as a witness any adverse party * * *, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party."

It appears that this provision (originally enacted as Chapter 109, § 4 of the Acts of 1864) was enacted to mitigate some of the harshness of the common law, which made no provision for the calling of adverse witnesses and under which a party might be absolutely bound by the evidence of his witness, regardless of whether he was an ordinary witness or the opposing party, without any opportunity to impeach him. Accordingly, this statute is to be construed strictly, and does not alter the common law except as explicitly provided. *Mason v. Poulson,* 43 Md. 161, 177 (1875). Thus, it has become settled that the party who puts on an adverse witness, is bound by his testimony insofar as such testimony is not impeached or contradicted. In *Vokroy v. Johnson,* 233 Md. 269, 196 A. 2d 451 (1964), a directed verdict for the defendant was affirmed where the defendant testified, as an adverse witness, that the plaintiff's decedent walked out into the road into the side of the defendant's car. Judge Marbury, for the Court, stated:

> "Unless it was contradicted or discredited, the testimony of the adversary, Johnson, is binding upon the plaintiff, Vokroy, who called him as a witness." (233 Md. at 272, 196 A. 2d at 452),

and accordingly, held that there was sufficient evidence to establish contributory negligence as a matter of law.

Similarly, in *Maszczenski v. Myers,* 212 Md. 346, 129 A. 2d 109 (1957), it was held that in the absence of contradiction or impeachment, the testimony of the defendant (called by the plaintiff) stood on the record as the explanation of how the ac-

cident occurred. Accord, *Morris v. Hazlehurst,* 30 Md. 362 (1869) ; *Harrison v. Harrison,* 117 Md. 607, 84 A. 57 (1912).

We agree with Judge Prescott in *Proctor Electric Co. v. Zink,.* 217 Md. 22, 141 A. 2d 721 (1958) that:

> " '[A] party is not bound by all the statements of a witness called by him, if adverse, even though no other witnesses are called to contradict him; the party may rely on part of such testimony, although in other parts the witness denied the facts sought to be proved.' (Citing 3 Jones, Evidence Civil Cases 1590 (4th Ed.) ) (217 Md. at 32-33, 141 A. 2d at 726)
>
> "The testimony of a witness may be contradicted or discredited by circumstances as well as by statements. of other witnesses, and a jury is not bound to accept a witness' testimony as true if it contains improbabilities, or if there are reasonable grounds for concluding that it is erroneous." (217 Md. at 33, 141 A. 2d at 726)

See also *Plitt v. Greenberg,* 242 Md. 359, 219 A. 2d 237 (1966) ; *Wood v. Johnson,* 242 Md. 446, 219 A. 2d 231 (1966) ; *Lehmann v. Johnson,* 218 Md. 343, 146 A. 2d 886 (1958).

In our opinion, however, these cases do not require every question arising from the testimony of an adverse witness. to be submitted to the jury. In the absence of some real doubt being cast upon the testimony in question, whether by the testimony of other witnesses and inconsistent circumstances. (*Wood v. Johnson, supra* and *Lehmann v. Johnson, supra*) or because the adverse witness' testimony was vague, indefinite and internally contradictory (*Plitt v. Greenberg, supra*) or because the matter testified to was opinion testimony brought out by his own counsel on cross-examination and was contradicted by other circumstantial evidence (*Proctor Electric Co. v. Zink,. supra*), it is proper to hold as a matter of law that the party who called the opposing party as his own witness is bound by his testimony.

In the present case, the plaintiff called both of the parties. defendant as his own witnesses, and the testimony of each one was totally consistent with that of the other. Nor do we find any

internal contradictions in the testimony of either defendant, or any circumstance or testimony by any other witness which tends to impeach the testimony of the defendants, insofar as relevant here. Moreover, the matters testified to were ones which were of a factual nature, generally within the personal knowledge of the defendants, and there was no vagueness, indefiniteness, or uncertainty in their testimony.

Thus, we must accept, as established, the following facts to which both Brady and Williams testified: (1) that Williams was asleep in the back of the car during the whole occurrence and was not drunk, (2) that Williams never consented, either explicitly or implicitly, to allowing Brady to drive, and (3) that Brady had never been allowed to drive Williams' car in the twelve years they had lived together.

We believe that assuming these facts, together with the others not in dispute here, the jury could not have found any state of facts upon which liability as to Williams could be predicated. Therefore, it was error for Williams' motions for a directed verdict and a judgment *n.o.v.* to have been denied.

As there is no suggestion that Williams was driving, he could be liable only if a) he was guilty of primary negligence in allowing Brady to drive, or b) if Brady's negligence could be imputed to him through the law of agency. We do not believe that, on the facts of this case, the jury could have found against Williams on either theory.

Clearly, as Williams was sleeping in the car before Brady took the keys and never explicitly authorized him to drive the car, and, as he continued to sleep until the occurrence of the accident, so that he cannot be said to have tacitly acquiesced in Brady's operation of the vehicle, he could not be guilty of negligent entrustment. See *Rounds v. Phillips,* 166 Md. 151, 170 A. 532 (1934).

Nor do we believe that the jury could have found, on the basis of the evidence before it, that there was a master-servant relationship between Williams and Brady so as to hold Williams vicariously liable for the wrong of Brady.

The mere fact that Williams is the stepfather of Brady is not significant as we have consistently held that the head of a family who maintains a motor vehicle for the general use of

his family is not liable for the negligence of a member of his family, who is driving the vehicle under a general authority. See *Talbott v. Gegenheimer,* 245 Md. 186, 189, 225 A. 2d 462, 464 (1967); *Schneider v. Schneider,* 160 Md. 18, 21, 152 A. 498, 499 (1930); *Myers v. Shipley,* 140 Md. 380, 383-92, 116 A. 645, 646-50, 20 A.L.R. 1460, 1463-68 (1922).

In any event, as we have pointed out above there was no evidence of any explicit authorization to drive the car by Williams to Brady, and in fact, any inference to that effect must be taken as specifically rebutted by the uncontradicted testimony that Williams was never awake during the whole occurrence of the trip. The appellees have argued that the jury could have found that Brady was the servant of Williams, on the basis of an implied authority. In our opinion the jury could not have made such a finding. Brady testified that he had lived with his stepfather for twelve years, and that he never had driven any of his cars, that his stepfather had refused him permission every time that he had asked, and that he had never had a driver's license, although he had driven farm equipment many years earlier. Williams also testified that he had never given Brady permission to drive nor had he ever driven any car owned by him. For the jury to have found an implied authorization would have required that they have disbelieved the testimony of both witnesses. Even if this were allowable, as it certainly may be in many instances, there was no other evidence anywhere in the case which could have been the basis for such a finding.

While we recognize that there is a presumption that the negligent operator of a vehicle is the agent, servant, or employee of the owner acting within the scope of his employment *Gutheridge v. Gorsuch,* 177 Md. 109, 114-15, 8 A. 2d 885, 887 (1939); *Finney v. Frevel,* 183 Md. 355, 359, 37 A. 2d 923, 925 (1944); *Hoerr v. Hanline,* 219 Md. 413, 419, 149 A. 2d 378, 381 (1959), this presumption is not conclusive. As Judge Collins, for the Court, stated in *Taylor v. Wesley Freeman, Inc.,* 186 Md. 474, 47 A. 2d 500 (1946):

> "This presumption is only *prima facie* and may be rebutted and overcome by evidence to the contrary produced during the trial by any of the parties to the

suit. Where such evidence is undisputed and not contradicted, it becomes properly a question for the court." (186 Md. at 477, 47 A. 2d at 502.)

We believe that, as the defendants' testimony was uncontradicted, the presumption was rebutted, and that in the absence of any other evidence, the question was one for the court to decide as a matter of law. As there was no evidence on which a finding of agency could be based, the jury cannot be allowed to merely speculate. *Plitt v. Greenberg,* 242 Md. 359, 367, 219 A. 2d 237, 243 (1966). We must, therefore, conclude that it was error for the court below not to have ruled that the jury could not have found, on the evidence before it, an agency based on an implied authorization by Williams to Brady.

The only other theory upon which Williams could be held liable would be if Brady's negligence could be imputed to him. As we have already stated, there was no evidence in this case of a master-servant relationship between Brady and Williams which would have supported a finding of liability under the rules of respondeat superior. See *House v. Jerosimich,* 246 Md. 747, 230 A. 2d 282 (1967), *Charles v. Mayor and City Council of Baltimore,* 138 Md. 523, 114 A. 565 (1921).

It is well established, however, that there is, independent of any other showing of a master and servant relationship, a presumption of agency arising from the presence of the owner of an automobile while another person is driving it. Thus in the leading case in this area, *Powers v. State,* 178 Md. 23, 11 A. 2d 909 (1940) *noted in* 5 Md. L. Rev. 104 (1940), Judge Delaplaine stated:

"'The owner has the right and the duty to prevent, if possible, the driver from operating the machine in a reckless and dangerous manner. If the car is negligently operated, it is presumed that the owner consented to the negligence. Therefore, in the absence of proof that he abandoned the right of control, he is liable for any damage resulting from the negligence of the driver." (178 Md. at 28, 11 A. 2d at 911.)

See also *Gray v. Citizen's Casualty Co.,* 286 F. 2d 625 (4th Cir. 1960). Cf. *Merritt v. Darden,* 227 Md. 589, 176 A. 2d 205

84

(1962) (applying the presumption when the issue was imputation of contributory negligence).

It is apparent that this presumption is, like the master-servant relationship, based upon the owner's right of control. As Judge Oppenheimer observed in *Slutter v. Homer,* 244 Md. 131, 223 A. 2d 141 (1966), a case involving the imputation of contributory negligence:

> "The doctrine of imputed negligence rests on the presumption that the non-driving owner had the right to control the vehicle. That presumption, as *Merritt* states, is rebuttable; the presumption is based, not on the actual exercise of control, but on the right to exercise it. The agency doctrine, on the other hand, rests on the relationship of the parties and the nature of the expedition during which the accident occurred. Imputed negligence, like agency, is based on the relationship, but turns on the facts in respect of the right to control, whereas the agency theory applies, where it is pertinent, irrespective of the momentary right of physical control. In short, the agency doctrine is predicated on a status rather than on inference of fact." (244 Md. at 139, 223 A. 2d at 145.)

As Judge Oppenheimer indicated, the imputation of negligence depends upon the existence of a state of facts establishing the owner's right to control, and accordingly, the presumption may be rebutted by a showing of a contrary state of facts. Thus, it is possible for the owner of an automobile to surrender the right to control the car so as to assume the status of an ordinary passenger. See, *e.g., Beaudoin v. W. F. Mahaney, Inc.,* 131 Me. 118, 159 A. 567 (1932); *Christensen v. Hennepin Transp. Co.,* 215 Minn. 394, 10 N.W.2d 406, 147 A.L.R. 945 (1943); *Rogers v. Saxton,* 305 Pa. 479, 158 A. 166, 80 A.L.R. 280 (1931); *Painter v. Lingon,* 193 Va. 840, 71 S.E.2d 355 (1952); *Fox v. Kaminsky,* 239 Wis. 559, 2 N.W.2d 199 (1942). See generally 8 Am.Jur.2d *Automobiles and Highway Traffic,* § 674 (1963). Significantly, a number of these cases have indicated that this is true even where there is a family relationship between the owner-passenger and the driver. See, *e.g., Christensen v. Hennepin Transp. Co.; Painter v. Lingon;*

*Fox v. Kaminsky,* all *supra.* As stated in *Phillips v. Foster,* 252 Iowa 1075, 109 N.W.2d 604 (1961) :

> "[W]here the owner is present in the car his right of control is presumed, and the burden is upon him to show that it has been surrendered or, because of the factual situation, could not be exercised." (252 Iowa at 1083, 109 N.W.2d at 608.)

Although there does not appear to be any Maryland case closely in point, we agree that the presumption of the owner's control may be rebutted by a proper showing that the owner-passenger relinquished his right of control or was unable to exercise that right.

We agree with the Supreme Court of Ohio in *Ross v. Burgan,* 163 Ohio St. 211, 126 N.E.2d 592, 50 A.L.R.2d 1275 (1955) that:

> "One being conveyed in his own vehicle and in furtherance of his own interests ought to be presumed to control his own property in his own transportation. If, in such circumstances, the presumption of agency obtains it casts on the proper persons—those who really know—the burden of producing evidence to negative the relationship." (163 Ohio St. at 219, 126 N.E.2d at 596, 50 A.L.R.2d at 1280.)

While this case affirmed a jury verdict which imputed the contributory negligence of the driver to the owner, we believe that the Ohio court assigned the correct status to the presumption, i.e., that it is a presumption of fact that shifts the burden of proving the non-existence of the agency status to the owner. Thus, the weight of the presumption is minimal, and while normally, it will be a jury question whether the owner has rebutted the presumption, in a proper case, the presumption may be rebutted as a matter of law. Thus, in *Potts v. Pardee,* 220 N. Y. 431, 116 N.E. 78, 8 A.L.R. 785 (1917), the New York Court of Appeals reversed a judgment for the plaintiff against the defendant who was the owner of a car in which she was riding, but was being driven by her husband's chauffeur. It is evident that the court felt obliged to reach this result as the plaintiff called the chauffeur as his own witness and was bound

by his testimony that he worked only for the husband, and the defendant-wife had no right of control. The court stated:

"The automobile was owned by the defendant and this fact was *prima facie* evidence of her responsibility for the manner in which it was driven. The presumption growing out of a *prima facie* case, however, remains only so long as there is no substantial evidence to the contrary. When that is offered the presumption disappears, and unless met by further proof there is nothing to justify a finding based solely upon it. * * * Here the presumption arising from the fact of ownership was entirely destroyed by the other evidence. [Citation omitted]" (220 N. Y. at 433, 116 N. E. at 79, 8 A.L.R. at 787.)

We believe that the facts of the present case are closely analogous, and that similarly, such uncontradicted testimony of the plaintiffs' own witnesses is sufficient to rebut the presumption as a matter of law.

The fact that the owner is asleep in his car is, by itself, not a dispositive factor, but under different circumstances may be evidence of either negligence or the lack of negligence. Thus, in *Stafford v. Roadway Transit Co.*, 165 F. 2d 920 (3rd Cir. 1948), Judge Maris, in upholding a verdict for an owner-passenger who was asleep in his car in spite of the driver's contributory negligence, stated:

"[T]here was ample support for the trial judge's finding that Stafford had turned the entire control of the car over to Barringer as his permissive driver and had no right to share in the control of the car at the time of the accident. Indeed, being asleep, it would have been impossible for him to exercise such control." (165 F. 2d at 922.)

An even stronger case is *Watkins v. Overland Motor Freight Co.*, 325 Pa. 312, 188 A. 848 (1937), where a jury verdict against the wife-owner of a car was reversed. The court held that where the husband took his wife's car on a business trip to New York and the wife went along as a passenger to go shopping and she was asleep in the car at the time of the acci-

dent, that as a matter of law, the husband's contributory negligence could not be imputed to the wife.

The present case is, of course, a much stronger case for non-liability. There is no question of relinquishment of the right of control, as it is undisputed that Williams was asleep at the outset of the trip and never consented to Brady's driving. Nor did Williams ever awake during the trip so as to regain his right of control. We do not believe that the language in *State v. Pennsylvania R. R. Co.,* 190 Md. 586, 594, 59 A. 2d 190, 194 (1948), that a passenger's falling asleep may be some evidence of negligence has any application in this case where it is undisputed that Williams was asleep before the trip started and had no reason to believe that anyone would attempt to drive the car. Nor is this case controlled by our recent decision in *Smith v. Branscome* (No. 340, Sept. Term, 1967, filed December 5, 1968), in which the bailee of the car was not merely asleep, but was in a state of unconsciousness caused by his own voluntary intoxication. We believe that there is a substantial difference between a man who is unable to exercise his right of control because he has voluntarily put himself in a condition where he is physically incapable of doing so, and one who is unable to do so because he is innocently unaware of the circumstances giving rise to that right of control.

Thus, we believe that the appellees are bound by the uncontradicted testimony of the witnesses whom they called and where that testimony establishes that the owner of the automobile never consented to its operation by the driver, nor did he know or have reason to know that it would be driven by another, and that during the entire trip was in such a position that he was unable to exercise his right of control, then it is conclusively established that there was no right of control or ability to exercise that right, and accordingly, the presumption of agency is rebutted. It was, therefore, error for the trial judge to refuse to grant the defendant Williams' motion for a directed verdict.

> *Judgment reversed and cause remanded for the entry of a judgment in favor of the appellant, for costs, the costs in this court to be paid by the appellees.*