MERRITT *v.* DARDEN

DARDEN, Etc. *v.* MERRITT

(Two Appeals in One Record)

[No. 65, September Term, 1961.]

590

*Decided after reargument February 21, 1962.*

The cause was argued and reargued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Wilbert McInerney* (on both arguments), with whom was *John S. McInerney* on the brief, for Dan Roenell Merritt.

*Edwin H. Pierce, Jr.,* and *Lansdale G. Sasscer, Jr.* (each on both arguments), with whom were *Sasscer, Clagett & Powers* on the brief, for the Dardens.

HORNEY, J., delivered the opinion of the Court.

The appeals in this case, involving a motor vehicle accident, arise out of alleged errors on the part of the trial court in refusing to rule as a matter of law on a motion for a directed verdict concerning a question as to imputed negligence and in giving an incorrect instruction to the jury with respect to the same question.

The plaintiff below, Mary English Darden (usually referred to herein as the mother or owner of the favored motor vehicle), in her own right, and as next friend of her son, William Herbert Darden, III, an infant (usually referred to

herein as the son or operator of the favored vehicle), sued Dan Roenell Merritt, the defendant below (referred to herein as the defendant or Merritt) for personal injuries and property damages resulting from a collision between the respective motor vehicles of the mother and the defendant at the intersection of Route 301 (a Maryland highway) and Route 228 (a Charles County highway).

On a week in the first part of June of 1959, the mother and son left Suffolk (Virginia) to visit relatives in Ithaca (New York) and in Crowdersville (Pennsylvania). On the trip north the mother and son shared the responsibility of driving the automobile. But on the trip south, the son had done all of the driving to the place where the accident occurred. At that time the mother was occupying the front seat of the automobile with the son. The collision occurred at about 5:20 on a Sunday afternoon.

Route 301, at the intersection in which the accident happened, is a divided highway with two lanes northbound on one side of the median strip and two lanes southbound on the other side. Traffic at the intersection with Route 228 was normally controlled by traffic signals, but a few minutes before the accident there had been a power failure and the electric signals were not operating. As a consequence, traffic entering the intersection from the east was required to stop first at the "stop" sign on the right of Route 228 before crossing the northbound lanes of the through highway and again at the "yield the right of way" sign on the right of the median strip before crossing the southbound lanes.

At the time of the accident, several motor vehicles (including that of a State Trooper who witnessed the collision) traveling in a northerly direction on Route 301 had stopped in both lanes at the intersection with Route 228. And, according to the trooper, at least one motor vehicle traveling in a southerly direction on Route 301 had also stopped in the fast lane at the intersection. The defendant, traveling in a westerly direction on Route 228, came to a full stop before entering Route 301 and, presuming the automobiles to his left had stopped to permit him to proceed, crossed both northbound lanes on to the crossway in the median strip, and then, as-

suming that the automobile (or automobiles) to his right in the fast southbound lane had also stopped for him, proceeded to cross the southbound lanes and was struck in the slow lane by the oncoming Darden automobile traveling in a southerly direction at a reduced rate of speed (obedient to a "caution" sign about sixty or seventy yards from the intersection) following other automobiles that had gone through the intersection in the slow lane without mishap. The defendant testified that he did not see the oncoming Darden automobile in the slow southbound lane. And the plaintiff-operator, who did not see the Merritt automobile until his mother warned him as to its presence, testified that he applied the brakes immediately and swerved to the right, but was unable to avoid striking the crossing Merritt automobile. On the other hand, the plaintiff-owner, who was not looking at the intersection but to her left, testified that she saw the Merritt automobile approach the southbound lanes, slow down as if it were going to stop, and then, suddenly realizing that it might not stop, called the attention of her son to it. She further testified that although the defendant was looking at them, he "just kept on coming." There was no real conflict in the testimony of the trooper and the parties to the litigation as to how the accident happened.

The proceedings at the trial of this case make it a very unusual one. At the close of the plaintiffs' case, the defendant moved for a directed verdict in his favor as to both plaintiffs. As to the operator of the Darden automobile, the defendant's motion was based on the theory that the defendant had the right of way, that he, the defendant, was free of all negligence and that even if he were negligent, the plaintiff-operator was guilty of contributory negligence. As to the owner, the motion was based on the theory that the negligence of the operator was imputable to the owner. The motion was overruled, but was renewed at the close of all the evidence, and was again denied. There were no motions, either for directed verdicts or otherwise, on behalf of the plaintiffs.

The trial judge, in his instructions, advised the jury generally with respect to primary and contributory negligence and as to the respective burdens of proof, as well as the pur-

pose of the "stop" and "yield" signs, and undertook to instruct the jury further to the effect that the operator of a motor vehicle on a favored highway has the right to assume that all traffic attempting to cross it will obey the law, and that the operator of a motor vehicle on an unfavored highway, after obeying the law (presumably as to stopping and yielding), has a right to assume that an operator of a motor vehicle on a favored highway will not negligently collide with the unfavored driver once he has complied with the "prerequisite preliminary" requirements of the law. He further instructed the jury as to the law of agency and in so doing advised the jury, on the one hand, that if it found the plaintiff-operator was the agent of the plaintiff-owner (and was guilty of negligence), then his negligence would be chargeable to her, but, on the other hand, if it found that said operator was not acting as the agent of the owner and that she was merely a passenger in the automobile along with him, then in that situation (if the defendant was guilty of primary negligence), the negligence of the plaintiff-operator could not be imputed to the plaintiff-owner.

At the conference between counsel and the court before the instructions were given to the jury, counsel for the plaintiffs, having submitted written prayers, sought, and vigorously contended for, an instruction to the effect that the plaintiff-operator had the right of way and therefore the right to assume that all vehicles approaching the intersection would yield the right of way to which he was entitled. As we have just stated the court did inform the jury that the operator of the motor vehicle on the favored highway had a right to assume that all traffic attempting to cross it would obey the law, but the court did not advise the jury that the motor vehicle on the favored highway had the right of way over the vehicle on the unfavored highway that had failed to obey the yield sign. And, counsel for the plaintiffs—although the trial court had omitted a vital portion of the prayer they had requested in the preliminary conference—did not except to the instruction after it had been given. Hence, insofar as the plaintiffs are concerned, the instructions as given became the law of the case and were, and are, controlling. On the other hand,

counsel for the defendant, in excepting to the instructions, stated that he relied on the objections he had made when the charge to the jury was discussed at the preinstruction conference. And, when the jury, during the course of its deliberations, sought amplification of the instructions by inquiring of the court whether the owner could recover damages from the defendant if the jury should determine that the operator was guilty of contributory negligence and was informed that she could, counsel for the defendant noted the fact that he was not waiving the objections he had previously made in "connection with the opposed instructions to the jury." But, again, counsel for the plaintiffs made no comments.

The jury found a verdict in favor of the plaintiff-owner for $9,800.89 against the defendant Merritt, and he appealed. At the same time the jury found a verdict in favor of Merritt against the plaintiff-operator, and the mother as next friend appealed.

On his appeal, the defendant Merritt contends that the trial court erred (a) in refusing to rule on the motion for a directed verdict that the negligence of the operator should be imputed to the owner as a matter of law; (b) in giving an improper instruction to the jury with respect to the question concerning imputed negligence; and (c) in amplifying its instruction on the question by answering in the affirmative the inquiry made by the jury. It appears that the assigned errors actually present two aspects of the same question. As appellee in the appeal of the plaintiff-operator, the defendant Merritt asserts that in the event the judgment against him in favor of the plaintiff-owner is reversed and a new trial awarded, the issue as to the negligence of the plaintiff-operator cannot be relitigated. On the other hand, the plaintiff-operator in his appeal from the judgment against him in favor of the defendant, in addition to implying that he was not negligent, contends that if the judgment in favor of the plaintiff-owner should be reversed and the case remanded for a new trial, then all of the issues between all of the parties should be retried.

The defendant Merritt also filed a motion for a judgment *n.o.v.* and (in the alternative) for a new trial, and the plaintiff-

operator filed a motion for a new trial, but both motions were overruled by the lower court.

As to the first aspect of the question concerning imputed negligence, it is apparent that the court was not in error in declining to rule on the question as a matter of law at the time the motion for a directed verdict was under consideration. There was in fact no basis for granting such motion. This was so because the evidence presented was not such as to authorize the trial court to rule that the operator of the Darden automobile had been guilty of contributory negligence as a matter of law. See the recent cases of *Harper v. Higgs,* 225 Md. 24, 169 A. 2d 661 (1961); *Eastern Contractors v. State, Use of Seifert,* 225 Md. 112, 169 A. 2d 430 (1961); *Green v. Zile,* 225 Md. 339, 170 A. 2d 753 (1961); and *Zeamer v. Reeves,* 225 Md. 526, 171 A. 2d 488 (1961), in which we had occasion to restate the applicable law and the theory underlying it. (Since it was not raised below, no question is presented here as to whether the parties plaintiff would have been entitled to a ruling that the plaintiff-operator was free of negligence.) As the motion for a directed verdict with reference to this aspect thereof lacked substance it follows that the motion for a judgment *n.o.v.* was, in this respect, likewise properly overruled by the trial court. Maryland Rule 563 a 1.

But, as to the second aspect of the question concerning imputed negligence, it is clear that the charge to the jury (and the subsequent amplification of a part thereof) was erroneous. Under the law of this State an owner of an automobile—since there is a presumption that he is in control of its operation while riding in it as a passenger—is as liable for damages in the event of a collision due to the negligence of the operator as if he himself had been operating the automobile. *Powers v. State, Use of Reynolds,* 178 Md. 23, 11 A. 2d 909 (1940). This is so because the negligence of the operator of a motor vehicle is generally imputed to an owner who is also a passenger. *Wallace v. Fowler,* 183 Md. 97, 36 A. 2d 691 (1944). See also the earlier case of *Vacek v. State, Use of Rokos,* 155 Md. 400, 407, 142 Atl. 491 (1928), where it was stated that "[i]t is not so much the actual exercise of

control which is regarded, as the right to exercise such control." And see the recent case of *Gray v. Citizens Casualty Company of New York,* 286 F. 2d 625 (4th Cir. 1960), involving the Maryland "Motor Vehicle Financial Responsibility" statute, codified as Code (1957), Art. 66½, §§ 116, *et seq.,* in which Chief Judge Sobeloff (of the Court of Appeals Fourth Circuit), in commenting on the effect of the decision in the *Powers* case, had occasion to remark at p. 627 that "an agency relationship is not necessary to be shown, for the failure of the owner, who is present, to exercise his presumed control makes him liable." Compare, also, the comments on the question of imputed negligence in Prosser, *Torts,* § 54, and the Restatement, *Torts,* § 485. Thus, it is apparent that in these cases the court was in error when it undertook to instruct the jury to the effect that the negligence of the operator (if found by the jury) was not imputable to the owner of the Darden automobile. Therefore, if the defendant properly preserved his right to a review, the judgment in favor of the plaintiff-owner against him must be reversed without a new trial, for the jury found the plaintiff-operator had been guilty of negligence under the instructions given, and nothing was done by the plaintiff-owner—by motion, objection, or otherwise—which affords us a right to review the same.

In order to have avoided all uncertainty, it might have been better practice under Rule 554 d had counsel for the defendant explicitly restated the "portion or omission or failure to instruct" objected to and the "specific [1] grounds of his objection" after the conclusion of the instruction, instead of stating that his objections would be the same as he had made in chambers immediately before the instruction was given in open court.

But inasmuch as it appears that the trial judge was fully aware of the principles of law advocated by counsel for the defendant before the instructions were given, we think that the objection made was substantial compliance with the re-

---

1. The amendment of § d of Rule 554 made September 15, 1961, rewrote the section and deleted the word "specific" before "ground."

quirements of the rule, and that what was done was sufficient to preserve the right of the defendant to a review by this Court under Rule 554 e.

For the reasons stated herein the judgment in favor of the plaintiff-owner against Merritt must be reversed without a new trial, and the judgment against the mother as next friend of the infant plaintiff-operator in favor of Merritt must be affirmed.

> *Judgment in favor of Mary English Darden in her own right reversed without a new trial; judgment against her as next friend of William Herbert Darden, III, infant, affirmed; costs to be paid by Mary English Darden.*