## SLUTTER *v.* HOMER

[No. 453, September Term, 1965.]

*Decided October 12, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Earl H. Davis* for appellant.

*Dewey B. Morris,* with whom were *Michael P. Crocker,*

*Piper & Marbury* and *W. Harvey Beardmore* on the brief, for appellee.

Oppenheimer, J., delivered the opinion of the Court.

This appeal from a judgment on a directed verdict for the appellee at the close of the appellant's case, involves two questions: the applicability of Code (1957) Article 66½, Sec. 234, and the legal effect of the negligence of the driver of the automobile upon the appellant, who was a joint owner of the car, the mother of the driver, and a passenger therein.

The evidence adduced by the appellant was that the accident occurred in North Beach, Maryland, a resort area, at the intersection of Erie Avenue and Third Street, at about noon on a clear day. The appellant was in the right front seat of a four door sedan, driven by her daughter, Pamela, then 16 years of age, who had had an operator's license for several months. In the back seat behind the driver, representing the third generation of the family, was the appellant's mother. The three women, with the appellant's husband, had been visiting a sister of the appellant's mother, who had a cottage at North Beach. On the day of the accident, the women had driven to a grocery store about six blocks from the cottage, and were returning to the cottage when the collision occurred. The automobile was owned jointly by the appellant and her husband.

Pamela was driving the car in which her mother and grandmother were passengers, south on Erie Avenue, on the north side of Third Street. Both streets were two-way, of about the same width of 18 to 22 feet. The roads were dry. The intersection was not controlled by any stop signs or automatic signal. Erie Avenue runs north and south, and Third Street east and west. Pamela testified that she stopped at the intersection, carefully looked in both directions, first right and then left (or east) and saw no traffic coming in either direction. Her view was unobstructed and nothing was wrong with her eyes. She could see to her left for several blocks to the water of the Chesapeake Bay. She started across Third Street and at the middle of the intersection collided with the car, driven by the appellee, which was coming from the east. Pamela testified that she heard

no warning signal and did not see the other vehicle until a split second before the impact. At the time of the collision, the car driven by Pamela was in second gear.

The appellant testified that her daughter had come to a stop as she approached the intersection, and looked up and down. "I also looked up and down the street. And neither one of us saw anything coming * * *". The appellant's mother, however, who was riding in the rear seat behind Pamela, testified that "after we got in the intersection, I saw the car but it was plenty time for it to stop * * *".

State Trooper Gerwig, called by the appellant, testified that, at the time of the accident, Third Street was a paved road, composed of black top, generally called macadam. Erie Avenue on the north side of Third Street, the section on which Pamela was driving, was a gravel road. It was under construction; it had "just recently been cut" by bulldozers, and had been filled with gravel. It was not paved.

The appellant sued the appellee for personal injuries sustained by her in the collision. At the conclusion of the testimony in her behalf, the trial court directed the jury to bring in a verdict for the appellee, on the grounds that Pamela was guilty of negligence as a matter of law, and that her negligence was imputed to her mother, the appellant. In this appeal, the appellant contends that the questions of Pamela's contributory negligence and the imputation of that negligence, if any, to the appellant, were questions of fact which should have been left to the determination of the jury. More specifically, the appellant argues that, because the intersection was uncontrolled, the vehicle which Pamela was driving was entitled to the right of way under Sec. 231 of Article 66½; and that the presence or absence of the appellant's right of control over her daughter, as her agent, was a question of fact.

Citation of authority is no longer necessary for the principle that, in passing upon motions for directed verdicts, the evidence and all reasonable inferences deducible therefrom are to be regarded in the light most favorable to the party against whom the verdict is asked. We look at the evidence in that light and assume, without deciding, that there was sufficient evidence to go to the jury as to the negligence of the appellee.

Whether Pamela was guilty of contributory negligence as a matter of law depends, on the undisputed testimony, on whether Sec. 231 or 234 of Article 66½ is applicable. These Sections read as follows:

"§ 231. *Vehicle approaching or entering intersection.*

"(a) *In general.*—Except as hereinafter provided, all vehicles or trackless trolleys shall have the right of way over other vehicles or trackless trolleys approaching at intersecting public roads from the left, and shall give right of way to those approaching from the right.

"(b) *Modification.*—The foregoing rules are modified at through highways and otherwise as stated in this article."

\* \* \*

"§ 234. *Vehicle entering paved highway.*

"The operator of a vehicle entering a paved public highway, which is hereby defined to be a highway having a hard, smooth surface, composed of gravel, shells, crushed stone, paving blocks, asphalt, concrete or other similar substance, from an unpaved public highway, or from a private road or drive, shall come to a full stop upon reaching the intersection, and yield the right of way to all vehicles approaching on such paved public highway."

Sec. 231, upon which the appellant relies, is expressly made subject to the provisions of the Article which follow it. Sec. 234 makes the operator of a vehicle upon a paved public highway the favored driver at the intersection of the paved highway with an unpaved highway. A paved highway, as defined in that Section, is one having a hard, smooth surface. The clear legislative intent is that the composition of the road, whether of gravel, crushed stone or other similar substance, is immaterial, as long as the highway has a hard, smooth surface. Correspondingly, and contrary to the appellant's contention, the material of which the highway is composed does not of itself make it one with a hard, smooth surface. It is the nature of

the surface which the Legislature has made controlling. Gravel may be treated so as to produce a hard, smooth surface, as is sometimes the case in the shoulders of expressways. In this case, however, the uncontradicted testimony adduced by the appellant was that whereas Third Street, on which the appellee was proceeding, was a paved road, the section of Erie Avenue down which Pamela was driving to the intersection, had been cut by bulldozers in the course of construction, and, while filled with gravel, was not paved. On the undisputed facts, Sec. 234 controls.

Under that Section, the unfavored driver is under the double duty of coming to a full stop upon reaching the intersection and yielding the right of way to a vehicle approaching on the paved highway. We have given Sec. 234 the same interpretation as has been given to the "boulevard" law, Article 66½, Sec. 233. *Grue v. Collins*, 237 Md. 150, 157, 205 A. 2d 260 (1964), and cases therein cited. See Note, 17 Md. L. Rev. 68 (1957).

Pamela testified that she came to a full stop before entering the intersection and her statement was corroborated, but her own testimony makes it clear that she failed to yield the right of way to the vehicle driven by the appellee. Her testimony and that of the appellant that, although they both looked to the left as well as the right before entering the intersection and that neither saw anything, except for a "split second" before the impact, does not relieve Pamela from the legal conclusion that she was negligent as a matter of law. The weather was clear, and the view to the left, from which direction the appellee was approaching, was unobstructed. Pamela testified she could see at least three blocks to the left, but nevertheless did not see the appellee approaching. Whether Pamela did not look when she should have, or did not see when she did look, on her own testimony she must be deemed to have been negligent as a matter of law. *Shanahan v. Sullivan*, 231 Md. 580, 583, 191 A. 2d 564 (1963); *Wallace v. Fowler*, 183 Md. 97, 103, 36 A. 2d 691 (1944). Even assuming that there was sufficient evidence of negligence on the part of the appellee for the question to have been submitted to the jury, Pamela must be deemed to have been contributorily negligent. A finding by the jury to the contrary on that question could not have been permitted to stand.

*Nardone v. Underwood,* 219 Md. 326, 149 A. 2d 13 (1959), relied upon by the appellant, is not in point. There, both roads at the intersection were hard-surfaced, and what is now Sec. 231 was held applicable. The Court, at 219 Md. 330, pointed out that the exception set forth in what is now Sec. 234 was not applicable on the facts. The motorist coming from the right, therefore, was the favored driver, unlike the situation here, where the driver entering from the unpaved road had the duty to yield the right of way. In *Standard Oil Co. of N.J. v. Sheppard,* 148 F. 2d 363 (D. C. Cir. 1945), cited by the appellant, there was evidence that the favored driver was on the wrong side of the road and that the unfavored driver could not reasonably have discovered the approach of the favored vehicle.

The second question is whether the appellant is barred from recovery against the appellee, on the facts, because of her daughter's contributory negligence. The court below, in directing a verdict for the appellee, held, as a matter of law, that Pamela's negligence was imputed to the appellant, the owner of the automobile and a passenger therein.

The appellee relies upon *Merritt v. Darden,* 227 Md. 589, 596-97, 176 A. 2d 205 (1962), to support the trial judge's ruling. *Merritt,* in this aspect, is closely in point on its facts to the present case. There was, as here, both a family relationship and a family expedition, with the mother-owner a passenger in the car driven by her minor son. The mother-owner brought suit against the driver of the other car involved in the collision, and the trial court instructed the jury that the negligence, if any, of the plaintiff's son was not imputable to her. This Court reversed the judgment in favor of the mother-owner.

On facts such as those present in *Merritt* and in this case, two distinguishable legal theories have been invoked by courts in various jurisdictions, and even by the same court, to bar recovery by the owner-occupant-parent. One theory, relied upon in *Merritt,* is that the negligence of the operator of the car is generally imputed to the owner-passenger. However, in *Vacek v. State, Use of Rokos,* 155 Md. 400, 142 Atl. 491 (1928), relied upon in *Merritt,* the issue was regarded primarily as one of whether the doctrine of *respondeat superior* was applicable. In *Vacek,* the enterprise in which the car was

driven was a trip made by friends, with the owner of the car a passenger, and, while some of the Court's language is that of imputation of negligence rather than that of agency, the controlling issue in the opinion is whether the relation of master and servant existed.

The doctrine of imputed negligence rests on the presumption that the non-driving owner had the right to control the vehicle. That presumption, as *Merritt* states, is rebuttable; the presumption is based, not on the actual exercise of control, but on the right to exercise it. The agency doctrine, on the other hand, rests on the relationship of the parties and the nature of the expedition during which the accident occurred. Imputed negligence, like agency, is based on the relationship, but turns on the facts in respect of the right to control, whereas the agency theory applies, where it is pertinent, irrespective of the momentary right of physical control. In short, the agency doctrine is predicated on a status rather than on inference of fact.

In *Gray v. Citizens Casualty Company of New York*, 286 F. 2d 625 (4th Cir. 1960), quoted with approval in *Merritt*, Chief Judge Sobeloff, for the court, said as to the Maryland law of imputed negligence that "an agency relationship is not necessary to be shown for the failure of the owner, who is present, to exercise his presumed control makes him liable." 286 F. 2d at 627.

The imputed negligence theory has been criticized as unrealistic and fictitious. See Prosser, *Torts* (1955) Sec. 54 and Note, 17 Ark. L. Rev. 91, 92 (1962-1963); 11 Drake L. Rev. 57, 60 (1961). The criticism rests on the practical consideration that, while back-seat driving is generally an annoyance, and sometimes a danger, it is almost never a physical fact. Restatement, Second, *Torts,* Sec. 485 rejects the doctrine of "imputed contributory negligence" as based on theories of a fictitious agency relation, which are now generally recognized as pure fiction, and no longer valid. However, the Restatement makes the rule of Sec. 485 subject to the accepted and realistic statements as to the agency situation set forth in Sections 486 and 491. Sec. 486 Comment *a,* states that the rule of Sec. 485 does not purport to determine the existence of the relation of master and servant. Sec. 491 Comment *j,* states that:

"\* \* \* [I]f the purpose of the journey is for the benefit of the owner, even though it is also for the benefit of him who is permitted to drive, the owner may under the principles of the law of Agency be regarded as the master of the driver even though no wages or reward other than the participation in the drive is paid to him."

Restatement, Second, *Agency,* 238 Comment *c,* states that:

"A child, however, may be the servant of his parent in driving an automobile in pursuance of his parent's orders or on his parent's business. If, for instance, a minor son is driving the family automobile with his father in the back seat, it is inferred that because of the ownership and the parental relation the parent has such control as causes him to be the master for this purpose."

On the uncontradicted testimony in this case, Pamela was the agent of her mother, not on the basis of the rejected family car doctrine, see *Schneider v. Schneider,* 160 Md. 18, 152 Atl. 498 (1930), and *Myers v. Shipley,* 140 Md. 380, 116 Atl. 645 (1922), but because, on the facts, *respondeat superior* applies. The trial judge was correct in holding that the appellant was barred from recovery because of the negligence of her daughter, whether that holding is based on the law of agency or on the controversial doctrine of imputed negligence.

*Judgment affirmed; costs to be paid by appellant.*