*Victoria Seaborne-Worsley v. Jeffrey Mintiens,* No. 26, September Term 2017. Opinion by McDonald, J.


**Torts – Negligence – Imputed Contributory Negligence.** Under the doctrine of imputed negligence, the owner of a motor vehicle may be held liable to a third party for the negligence of an individual who operates the motor vehicle while the owner is a passenger. The doctrine of imputed negligence was once also applied to allow a negligent third party to raise a defense of contributory negligence against an injured owner-passenger who was personally without fault. The doctrine has been overtaken by changes in the laws governing automobiles and developments in insurance coverage. To the extent that the application of the doctrine to support a defense of contributory negligence bore any relation to the reason for the doctrine, it has become obsolete. Accordingly, that doctrine does not apply when the owner-passenger seeks compensation for injuries suffered in an accident in which the owner-passenger was not at fault.

Circuit Court for Baltimore County
Case No. 03-C-16-012948
Argument:  December 4, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 26

September Term, 2017

_____

VICTORIA SEABORNE-WORSLEY

V.

JEFFREY MINTIENS

_____

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty,
Battaglia, Lynne A. (Senior
    Judge, Specially Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed:  April 20, 2018

Under the "controversial doctrine of imputed negligence,"[1] the negligence of one individual may be imputed to another who was otherwise without fault. In the realm of automobile torts, the doctrine has been applied to ascribe the negligence of a permissive driver of a car to the owner of the car if the driver operates the car negligently while the owner is a passenger. In that context, the doctrine of imputed negligence is based on the fiction that the owner is able to control the actions of the driver and therefore is responsible for any misstep of the driver.

In the past, the doctrine functioned to ensure that individuals injured in automobile accidents would be able to obtain compensation from the party most likely to be financially responsible – the car's owner. However, developments in the law and in insurance coverage make reliance on the fiction of owner control less compelling. Moreover, in situations where an owner-passenger is injured and innocent of any negligence, application of the doctrine, in conjunction with a defense of contributory negligence, can have the perverse effect of foreclosing compensation to an injured party who was not personally at fault. As a result, courts in many states have abrogated or limited the doctrine of imputed negligence. This case presents an opportunity for us to do the same.

This case grew out of an accident in a restaurant parking lot when Respondent Jeffrey Mintiens backed his truck out of a parking space and struck a car in which Petitioner

---

[1] *Slutter v. Homer*, 244 Md. 131, 140 (1966).

Victoria Worsley ("Ms. Worsley")[2] was seated. Ms. Worsley's husband[3] had driven the couple to the restaurant and left the car and his wife stopped in a travel lane perpendicular to Mr. Mintiens' parking space while he retrieved the couple's take-out order from the restaurant.

Ms. Worsley filed suit against Mr. Mintiens in the District Court of Maryland sitting in Baltimore County, alleging that Mr. Mintiens was negligent and seeking various damages. At trial, Mr. Mintiens raised the defense of contributory negligence. The District Court concluded that Ms. Worsley's husband had himself been negligent. It also concluded that his negligence should be imputed to Ms. Worsley under the imputed negligence doctrine because, though a passenger, she was the sole owner of the car at the time of the accident. Accordingly, the District Court entered a judgment in favor of Mr. Mintiens. In an on-the-record appeal, the Circuit Court for Baltimore County affirmed that decision.

---

[2] Petitioner filed her complaint in this case under the name of "Victoria Worsley" and identified herself by that name in her testimony at trial. The petition for a writ of *certiorari* identifies Petitioner as "Victoria Seaborne-Worsely." Other filings in the case, including the briefs in this appeal, have referred to the Petitioner's last name as "Seaborne-Worsley," while some documents in the record identify her last name as "Worsley-Seaborne," "Worsley (Seaborne)," or "Shelvon Worsley." As best we can tell, no amendment was made in the District Court or Circuit Court pursuant to Maryland Rules 2-341(c) or 3-341(c)(4) to correct the name of the plaintiff and we are otherwise unable to determine which spelling is correct or which name the Petitioner prefers. For purposes of this opinion, we shall defer to the name that Petitioner gave in her testimony in the trial court and will refer to her as "Ms. Worsley."

[3] As best we can tell from our examination of the proceedings in both the District Court and Circuit Court, neither the first name nor last name of Ms. Worsley's husband appears in the record – in contrast to the surfeit of names that the record contains for his wife. Accordingly, we shall refer to him simply as "Ms. Worsley's husband."

2

We granted Ms. Worsley's petition for a writ of *certiorari* to consider whether the doctrine of imputed negligence applies in these circumstances. For the reasons set forth in this opinion, we hold that it does not.

**I**

**Background**

*A.    The Accident*

The following facts are derived from the testimony at trial before the District Court. Although some facts are disputed – and we indicate where below – those relevant to the issue before us are largely uncontested.

On the evening of October 23, 2015, Ms. Worsley and her husband drove to the Pappas Restaurant in Parkville, Maryland to pick up a take-out dinner. Ms. Worsley's husband drove the car – a four-door sedan of which Ms. Worsley was the sole owner[4] – while she rode in the front passenger's seat. They arrived at the restaurant sometime shortly before 6:30 p.m.

At the restaurant, there was a window facing the parking lot where customers could pick up take-out orders. Adjacent to this window were at least two handicapped parking spaces. Ms. Worsley's husband stopped the car perpendicular to the handicapped parking

---

[4] The precise nature of Ms. Worsley's ownership of the car is not entirely clear in the record. No evidence of the title or registration of the vehicle was submitted by either party. However, Ms. Worsley testified in the District Court that it was "my car" and, when the trial judge asked her counsel during legal argument whether she was the "exclusive owner," she herself responded "yes."

spaces, placed it in park, got out of the car, and walked to the carry out window, leaving Ms. Worsley alone in the car. According to Ms. Worsley, she was supposed to take her husband's place in the driver's seat and park the car while he retrieved their food.

In the meantime, Mr. Mintiens had been at the restaurant since 5 p.m., during which time he met a friend and drank three beers. Shortly before 6:30 p.m., he obtained a take-out order for his family's dinner and set out for the parking lot, where he had parked his truck opposite the handicapped spaces.

Mr. Mintiens testified that he did not notice any cars parked behind his truck at that time. According to Mr. Mintiens, in the space of approximately 20 seconds, he walked to the passenger side of his truck, placed the food in the passenger seat, went back around to the driver's side, and got into his truck. Somewhat at odds with Mr. Mintiens' testimony, Ms. Worsley testified at trial that she was already sitting alone in her car when, in her peripheral vision, she saw Mr. Mintiens walk across the parking lot and approach his truck, which was parked just about two and a half feet from the car in which Ms. Worsley sat.

According to Mr. Mintiens, after he got into the truck, he looked in his rear view mirror and driver side mirror (but not his passenger side mirror) before backing up. There appears to be no dispute that what happened next was that Mr. Mintiens backed his truck into Ms. Worsley's car.

Ms. Worsley testified that she was about to unbuckle her seat belt to get out and move her car when she saw the truck backing towards her. She braced herself against the window with her right hand, also hoping to catch Mr. Mintiens' attention. This was

4

apparently to no avail. The back of Mr. Mintiens truck hit the back passenger-side door of Ms. Worsley's car.

Upon feeling his vehicle collide with something, Mr. Mintiens looked around, believing he may have hit a pothole. When he saw Ms. Worsley's car, he pulled forward and got out of his truck. Mr. Mintiens examined the damage done to Ms. Worsley's car, offered to pay for it, made a suggestion how to take the dent out of the side door, and exchanged information with Ms. Worsley before driving home.

Ms. Worsley testified that, although she went home with her husband after the accident, she later sought medical treatment for injuries to her neck, back, left arm and shoulder, and right hand.

## B. Legal Proceedings

### 1. District Court

A little over nine months after the accident, on July 25, 2016, Ms. Worsley filed a complaint against Mr. Mintiens in the District Court of Maryland sitting in Baltimore County, alleging negligence and seeking compensation for her injuries. The parties appeared for trial on November 3, 2016. At trial, both Ms. Worsley and Mr. Mintiens testified, recounting their respective versions of the accident. The District Court stated that it would likely find that Mr. Mintiens was negligent and liable, except that the defense of contributory negligence applied to relieve him of liability.

The District Court explained that Ms. Worsley's husband failed to exercise ordinary care when he parked perpendicular to a handicapped space, right behind Mr. Mintiens' truck, rather than in a parking space in the restaurant lot. The District Court found that this

5

negligence contributed to the accident. Citing *Bowser v. Resh*, 170 Md. App. 614 (2006), the District Court relied on the doctrine of imputed negligence to ascribe the negligence of Ms. Worsley's husband to the owner of the car – Ms. Worsley. Under that doctrine, an owner of a vehicle who allows someone else to drive while remaining present as a passenger may be held liable for any negligence of the driver. Because the negligence of Ms. Worsley's husband was therefore imputed to her, Ms. Worsley was deemed to be contributorily negligent. Accordingly, the court entered judgment in favor of Mr. Mintiens.

Ms. Worsley appealed to the Circuit Court under Maryland Rule 7-113.

### 2. Appeal to the Circuit Court

After hearing oral argument from the parties, the Circuit Court affirmed the District Court ruling in an order dated May 5, 2017. The Circuit Court found that there was substantial evidence in the record to support a finding that both Mr. Mintiens and Ms. Worsley's husband were negligent. The Circuit Court agreed that, under the doctrine of imputed negligence, there was a rebuttable presumption that Ms. Worsley, as sole owner of her car, had control over her husband's operation of it and would be vicariously liable for his negligence. The Circuit Court stated that, because the District Court found no evidence to rebut the presumption, it properly imputed her husband's negligence to Ms. Worsley. As a result, Ms. Worsley's claim failed under the doctrine of contributory negligence.

Ms. Worsley petitioned this Court for a writ of *certiorari*, which we granted.

## II

### Discussion

Ms. Worsley presents two issues for our consideration:

(1)   Whether the doctrine of imputed negligence should be applied to hold that a sole owner-passenger, such as Ms. Worsley, is vicariously liable for the negligence of a permissive driver such that her claim is barred under the doctrine of contributory negligence.

(2)   In the alternative, whether the imputed negligence of Ms. Worsley's husband was the proximate cause of Ms. Worsley's injuries.

Mr. Mintiens argues that we should not address the second question because Ms. Worsley failed to preserve that issue in the District Court or Circuit Court. We need not decide whether Ms. Worsley adequately preserved her second issue as we hold that the doctrine of imputed negligence does not apply in these circumstances. It was on the basis of imputed negligence alone that the District Court found Ms. Worsley contributorily negligent and thus barred her from recovery. If the doctrine of imputed negligence does not apply to this case, then any negligence of Ms. Worsley's husband would not be imputed to Ms. Worsley and her claim would not fail on that basis. Accordingly, we need not reach the second question.

### A.   *Standard of Review*

When an action has been tried by the court without a jury, an appellate court reviews the case on both the law and the evidence. Maryland Rule 8-131(c). The trial court's factual findings are accepted unless clearly erroneous. *Id.* The appellate court affords no

7

deference to the trial court's legal conclusions. *City of Bowie v. Mie Properties, Inc.*, 398 Md. 657, 676-77 (2007).

**B.      *Whether the Doctrine of Imputed Negligence Bars Ms. Worsley from Recovery***

In this case, the District Court found that Ms. Worsley's claim was barred by the defense of contributory negligence.[5]  It did so without making any finding as to whether Ms. Worsley herself was negligent.  Instead, the trial court found that her husband was negligent in his operation of the car and imputed that negligence to Ms. Worsley because she asserted that she was the sole owner of that car.  With her husband's negligence imputed to her, Ms. Worsley's claim failed under the standard of contributory negligence.

Assuming for the sake of argument that Ms. Worsley's husband was negligent in how he parked the car, the question is thus whether the doctrine of imputed negligence applies here to defeat Ms. Worsley's claim on the basis of contributory negligence.[6]  For the reasons set forth below, we conclude that it does not.

---

[5] Contributory negligence is a potential defense in a negligence action in Maryland. *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 685-90 (2013).  Under that standard, subject to certain exceptions and qualifications not pertinent here, when a plaintiff's failure to exercise ordinary care is a proximate cause of the plaintiff's injuries, the plaintiff is barred from recovery against the defendant. *Coleman*, 432 Md. at 687.  This is true regardless of whether the defendant's negligence was also a proximate cause of the plaintiff's injuries. *Id*.

[6] Some of the arguments pressed by Mr. Mintiens in his appellate brief appear to assert that Ms. Worsley herself was negligent.  For example, Mr. Mintiens faults Ms. Worsley for neglecting to instruct her husband where to park, to pick up the take-out order herself, or, once her husband left the car, to move the car to an appropriate parking space. However, the question whether Ms. Worsley was personally negligent is not before us and we express no opinion on that subject.

8

1.    The Doctrine of Imputed Negligence

Under the classic formulation of the doctrine of imputed negligence, when the owner of a vehicle is a passenger in that vehicle and allows another person to drive, any negligence of the operator of the vehicle may be attributed to the owner. *See Merritt v. Darden*, 227 Md. 589, 596-97 (1962). The doctrine is based on the presumption that the owner, although not at the wheel, is in control of the vehicle, or at least has the right to exert control. *Id.*; *Slutter v. Homer*, 244 Md. 131, 139 (1966). The negligence of the non-owner driver, therefore, is imputed to the owner. *Smith v. Branscome*, 251 Md. 582, 595 (1968) (quoting *Gray v. Citizens Casualty Co.*, 286 F.2d 625, 627 (4th Cir. 1960) ("[T]he failure of the owner, who is present, to exercise his presumed control makes him liable."); *see also Powers v. State*, 178 Md. 23, 28 (1940) (owner-passenger presumed to "tacitly assent" to the manner in which the owner's car is driven).

The presumption of owner control that underlies the doctrine of imputed negligence is rebuttable. The presumption – and therefore the application of the doctrine – can be defeated by evidence that the owner was unable to exercise control over the vehicle. *See Williams v. Wheeler*, 252 Md. 75 (1969). In *Williams*, the owner-passenger, after spending a night out at a bar with his stepson, was asleep in the back seat of his car when the unlicensed stepson retrieved the car keys from the window visor, proceeded to drive them both home, and was involved in a collision with the plaintiffs' car while en route. In deciding whether the owner-passenger could be held liable for the driver-stepson's negligence, the Court stated that the presumption underlying the doctrine of imputed negligence could be rebutted "by a proper showing that the owner-passenger relinquished

9

his right of control or was unable to exercise that right." 252 Md. at 85. The Court held that, because the owner-passenger in *Wheeler* never consented to the stepson taking control of the vehicle and was unable to exercise his right to control due to his somnolent state, the presumption was rebutted in that case and the negligence of the driver was not imputed to the owner-passenger. *Id.* at 87.

The doctrine of imputed negligence is not based on any negligence of the owner-passenger. Rather, it is a form of vicarious liability. It is thus distinct from the tort of negligent entrustment. An owner of a car may be found liable for the tort of negligent entrustment when the owner permits another to use the car when the owner knows, or reasonably should know, that the other person is likely to use the car in a manner likely to cause injury to others. *See Kiriakos v. Phillips*, 448 Md. 440, 480-82 (2016). The tort of negligent entrustment is thus based on the negligent action of the car owner – *i.e.*, entrusting the car to an unreliable driver – and does not depend on whether the owner is present at the time of the accident. It is a form of direct negligence and is not a theory of vicarious liability. *Neale v. Wright*, 322 Md. 8, 14 (1991). By contrast, the doctrine of imputed negligence is not premised on any negligence of the car owner, but only on the car owner's ownership and presence at the time of the accident.[7]

---

[7] This Court has previously noted that liability for a driver's negligence has sometimes also been imposed on an owner-passenger under a theory of agency or *respondeat superior* and that, while those theories are distinct from the doctrine of imputed negligence, there is some lack of clarity in the case law. *See, e.g.*, *Slutter v. Homer*, 244 Md. 131, 138-40 (1966) (noting that even though in *Vacek v. State, Use of Rokos*, 155 Md. 400 (1928), the Court's "language is that of imputation of negligence rather than agency, the controlling issue in *Vacek* is whether the relation of master and servant existed");

10

Under what is sometimes called the "both ways" theory,[8] the doctrine of imputed negligence has been applied not only to hold an owner-passenger liable to an injured third party, but also to foreclose a claim by an injured owner-passenger on the ground of contributory negligence. The logic in a case such as this one is simple. Where the car owner (Ms. Worsley) is a passenger in that car while a permissive driver (her husband) is negligent in parking or operating the car, and where there is no showing that she was asleep or otherwise incapable of exercising control, her husband's negligence is attributed to her. If that negligence was a proximate cause of an accident that injured her, the doctrine of imputed negligence, under the "both ways" theory, deems her to be contributorily negligent and defeats a negligence claim by her against a third party such as Mr. Mintiens.[9]

_____

*Nationwide Mut. Ins. Co. v. Stroh*, 314 Md. 176, 181 (1988) (referring to *Powers v. State*, 178 Md. 23, 28 (1940) as the "leading Maryland case on imputed negligence," although the decision in *Powers* appeared to rest in part on the fact that there was "no question that [the driver] was operating the vehicle on behalf of [the owner-passenger]," suggesting an agency relationship between the driver and the owner). *See also* Note, *Imputed Contributory Negligence in Automobile Cases*, 27 Md. L. Rev. 387, 399-401 (1967) (describing contending theories for imputing negligence under Maryland case law). Nonetheless, this Court has since affirmed on several occasions that "an agency relationship is not necessary to be shown" for imputed negligence to apply, *Stroh*, 314 Md. at 180-81, and that agency and imputed negligence are separate doctrines, *Slutter*, 244 Md. at 138-39.

[8] *See* C.O. Gregory, *Vicarious Responsibility and Contributory Negligence*, 41 Yale L.J. 831 (1932).

[9] This was the result in *Slutter v. Homer*, 244 Md. 131 (1966) (negligence of daughter-driver imputed to mother-passenger, who was owner of the car, to hold mother contributorily negligent and bar mother's claim against driver of other car); and *Merritt v. Darden*, 227 Md. 589 (1962) (jury finding of contributory negligence of son-driver imputed to passenger-mother, who was owner of the car, requiring reversal of judgment in favor of mother against driver of other car).

11

The reasoning of the "both ways" theory of imputed negligence appears logical in its symmetry. A logician might conclude the analysis with Q.E.D.[10] or the brutally logical and fictional Sherlock Holmes might say: "Elementary."[11] However, as a real-life Holmes once famously said: "The life of the law has not been logic; it has been experience." Oliver Wendell Holmes, Jr., *Book Notices*, 14 Am. L. Rev. 233, 234 (1880).[12] He elaborated:

> The seed of every new growth within [the law's] sphere has been a felt necessity. The form of contiguity has been kept up by reasonings purporting to reduce everything to a logical sequence; but that form is nothing but the evening dress which the new-comer puts on to make itself presentable according to conventional requirements. The important phenomenon is … the justice and reasonableness of a decision ….

*Id.* Holmes' insight is that it is the wisdom of the common law that a doctrine developed by the courts to decide cases may begin as an elegant theoretical construct, but is often modified and thereby rendered less elegant, or discarded entirely, to accommodate actual experience or changed conditions.[13]

---

[10] The initials stand for "Quod Erat Demonstrandum," a Latin phrase that means roughly "that which was to be proved" and that frequently is appended to the end of a mathematical or logical proof.

[11] Arthur Conan Doyle, *The Crooked Man* in The Memoirs of Sherlock Holmes (1893).

[12] The future Justice Holmes recycled the sentence and the sentiment the following year in a book comprised of a series of lectures on the common law. Oliver Wendell Holmes, Jr., The Common Law (1881) at p.1.

[13] The context for Holmes' observations was an otherwise enthusiastic review of a contracts textbook, in which he tempered his praise for the textbook with the observation that the textbook author was promoting a vision of contract law that, while logically and internally consistent, and perhaps even elegant as a theoretical system, could become detached from human experience.

Something like what Holmes described has happened with the doctrine of imputed negligence in the context of automobile torts. Courts in Maryland and elsewhere have developed exceptions, clothed them in the logic of the original doctrine, and thereby circumscribed application of the doctrine to reach a just and reasonable result in a particular case.[14]

2. Modification of the Doctrine of Imputed Negligence

*The Original Purpose*

At the outset of the automobile era, the application of the doctrine of imputed negligence to extend liability to the owner of this marvel of modern technology was seen as necessary for ensuring compensation for an injured innocent party and for spreading risk. As this Court has explained: "The alarming increase in traffic accidents, together with the frequent financial irresponsibility of the individual driving the car, has led to a search for some basis for imposing liability upon the owner of the vehicle, even though he is free of negligence himself. Bluntly put, it is felt that … the owner is the obvious person to carry the necessary insurance to cover the risk, and so to distribute any losses among motorists as a class." *Williams v. Knapp*, 248 Md. 506, 508 (1968) (quoting W. Prosser, The Law of Torts (3d ed. 1964)).

---

[14] More than 50 years ago, after closely reading Maryland case law on the doctrine of imputed negligence in automobile tort cases, one commentator detected "some degree of dissatisfaction" in this Court with the application of the doctrine to defeat an innocent owner's claim against a third party tortfeasor on the ground of contributory negligence and foresaw the demise of imputed contributory negligence. Note, *Imputed Contributory Negligence in Automobile Cases*, 27 Md. L. Rev. 387, 396, 402-3 (1967).

In subsequent years, the doctrine of imputed negligence, created out of a "felt necessity" for compensating innocent victims of automobile accidents, has lost much of its reason for being while weaknesses in its theoretical foundation have been exposed. It is now less compelling for several reasons.

*Changes in Statutory Law and Insurance Coverage*

As a result of changes in statutory law and insurance coverage, there is now less need to resort to the doctrine of imputed negligence to spread the risk associated with automobile accidents and to compensate injured parties. In 1957, the General Assembly created the Unsatisfied Judgment and Claim Fund (now a part of the Maryland Automobile Insurance Fund[15]) to provide a source of compensation to those injured by uninsured motorists. Chapter 836, Laws of Maryland 1957. In 1972, the Legislature enacted the compulsory insurance law, requiring liability insurance as a condition of registering a car in Maryland. Chapter 73, Laws of Maryland 1972, *now codified in* Maryland Code, Transportation Article, §17-101 *et seq*.; Insurance Article ("IN"), §19-501 *et seq*. A few years later, the Legislature amended that law to require such policies to include uninsured motorist coverage. Chapter 562, Laws of Maryland 1975, *now codified in* IN §19-509 *et seq*.[16] Automobile insurance policies in Maryland now include an "omnibus clause" that

---

[15] *See* Maryland Code, Insurance Article, §20-601 *et seq*.

[16] For a fuller description of the development of the statutes governing automobile insurance in Maryland, *see* Andrew Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011), Chapter 2.

extends coverage beyond the owner of the car to most permissive drivers – a clause that is likely to provide coverage for any permissive driver transporting the vehicle owner as passenger. *See* Andrew Janquitto, Maryland Motor Vehicle Insurance (3d ed. 2011), §7.7.

*The Fiction of Owner Control*

This Court has recognized that, in modern times,[17] the fiction underlying the "controversial doctrine of imputed negligence" is divorced from reality. *Slutter v. Homer*, 244 Md. at 139-40; *Nationwide Mut. Ins. Co. v. Stroh*, 314 Md. 176, 179-80 (1988). In *Slutter*, this Court observed that the doctrine "has been criticized as unrealistic and fictitious. The criticism rests on the practical consideration that, while back-seat driving is generally an annoyance, and sometimes a danger, it is almost never a physical fact." 244 Md. at 139 (internal citations omitted).

While an owner-passenger may have the *right* to control the vehicle when present as a passenger, the owner's *ability* to control the vehicle is quite another thing. Indeed, an owner-passenger's attempt to take control of a car, especially while the car is moving, is both inadvisable and likely ineffective in preventing the driver from driving negligently. When the Minnesota Supreme Court abandoned the doctrine of imputed negligence (at least to the extent of imputed contributory negligence), it made the ironic observation that an owner-passenger's attempt to wrest control over the operation of a car from a permissive

---

[17] It has been suggested that the presumption of control by an owner-passenger may have had some relation to reality in the days of the horse and buggy when a passenger might take over the reins and "actual control was a possibility." *Kalechman v. Drew Auto Rental, Inc.*, 308 N.E.2d 886, 889 (N.Y. 1973) (citation and internal quotation marks omitted).

driver would be "the clearest evidence of active negligence" on the part of the owner. *Weber v. Stokely-Van Camp, Inc.*, 144 N.W.2d 540, 545 (Minn. 1966).

*Who is an "Owner"?*

As is evident, the fiction of owner control requires identification of the owner-passenger as "owner" of the vehicle – a designation that may focus the analysis on form rather than substance. In many families, whether a vehicle is "my car" or "his car" or "her car" is unrelated to the formal titling or registration of the vehicle. The titling of a car may have more to do with financing the purchase of the vehicle, apportioning tax liability, estate planning, or mere happenstance than with the exercise of dominion over the vehicle. *Cf. Green v. Green*, 64 Md. App. 122, 144 (1985) (automobile purchased by one spouse during marriage included in computation of marital property). Moreover, there may be two or more co-owners on the title. *See* Maryland Motor Vehicle Administration, Interactive Title and Registration Manual at p. 31, available at <http://www.mva.maryland.gov/_resources/docs/Interactive-Title-and-Registration-Manual.pdf> (last visited April 18, 2018).

*Circumscribing the Doctrine in Case Law*

In *Williams v. Knapp, supra*, this Court confronted – for the first time – a case in which the owner-passenger, who was injured in an accident, sought to recover damages from the permissive driver for injuries suffered as a result of the driver's negligence. A strict application of the doctrine of imputed negligence would have imputed the driver's negligence to the owner-passenger, providing the driver with a defense of contributory negligence to the owner's claim. However, in the absence of an injured third party, the Court saw "no reason" to indulge the fiction in those circumstances and apply the

16

doctrine's presumption that the owner exercised control over the driver's actions. Rather, it chose to apply "the ordinary rules by which primary negligence and contributory negligence are determined[.]" 248 Md. at 509. In the Court's view, the pragmatic rationale for the doctrine – improving the possibility that an injured third party could recover by extending liability to the likely insured party (the owner) – disappeared when the owner was the injured party.

Some years later, the Court further limited the application of the doctrine of imputed negligence in another case involving an injured owner with facts somewhat similar to the instant case. In *Nationwide Mut. Ins. Co. v. Stroh*, 314 Md. 176 (1988), Richard Stroh was driving a car in which his wife Ellen and their daughter were passengers when their car collided with another car driven by a third party. 314 Md. at 178. Like Ms. Worsley, Ellen Stroh filed suit against the third party to recover compensation for her injuries. At trial, the defendant insurance company[18] asked the trial court to give a jury instruction on contributory negligence that incorporated the doctrine of imputed negligence – *i.e.*, that if the jury found Richard Stroh to be contributorily negligent, his negligence should also be imputed to his wife. The trial court declined to give the requested instruction, the jury awarded damages in favor of Ellen Stroh, and the insurance company appealed.

---

[18] Because the driver of the other car was uninsured, Ms. Stroh sought to recover compensation pursuant to the uninsured motorist provision of the Strohs' own motor vehicle insurance policy.

17

This Court affirmed the trial court, providing two rationales in its opinion. First, the Court recited the theoretical basis of the doctrine – "the theory that the owner-passenger retains his right to control the movements of the vehicle" – and acknowledged the widespread criticism of that premise. 314 Md. at 179-81. However, the Court declined to revisit the merits of the imputed negligence doctrine as it was able to carve out an exception to the doctrine under the doctrine's own logic. The Strohs were co-owners of their vehicle. In the Court's view, that status defeated the theoretical basis of the imputed negligence doctrine because "Ellen Stroh, as the co-owner-passenger, can with no degree of logic be said to have had an absolute or superior right to control operation of the automobile" driven by her co-owner husband. *Id.* at 182. The Court posited a hypothetical scenario under which a co-owner-passenger attempted to exercise the right to control vehicle over a co-owner driver. *Id.* The Court concluded that, in that hypothetical scenario, the co-owner driver would have "fair standing to rebuff, and thereby negate the [co-owner] passenger's assertion of control." *Id.* at 182.

The Court surveyed decisions by courts in several other states that had employed similar reasoning to reach the same conclusion and found them persuasive. 314 Md. at 182-85. It concluded that there was no justification for imputing any negligence of the co-owner driver (Richard Stroh) to the co-owner passenger (Ellen Stroh). *Id.* at 185.

Second, as it had in *Knapp*, the Court noted that "the primary policy aim undergirding the doctrine of imputed negligence" was to locate a source for compensating an innocent victim for another's negligence. It observed that applying the imputed negligence doctrine in the case before it to allow the jury to find Ellen Stroh contributorily

18

negligent would have had the opposite result in that it would have denied compensation to an innocent injured victim. 314 Md. at 185. Significant to the instant case, the Court recognized that there should be a distinction between cases in which the liability of an owner-passenger is at issue from cases in which the owner-passenger seeks recovery from a negligent party. *Id.* In other words, the Court cast doubt on the viability of the "both ways" theory of imputed negligence. The Court in *Stroh* left open the possibility of making a distinction between an innocent *sole owner-passenger* and innocent *co-owner-passenger* for purposes of imputed contributory negligence, such that an innocent sole owner-passenger's claim would be barred by the doctrine, but the Court was careful not to endorse such a distinction. *Id*. at 179.

More recently, in a case that was cited by the District Court at trial, the Court of Special Appeals held that the manner in which a vehicle is titled or registered is not conclusive on ownership status for purposes of application of the doctrine of imputed negligence. *Bowser v. Resh*, 170 Md. App. 614, 631 (2006). In that case, the plaintiff wife was injured in an automobile accident while a passenger in a van titled in her name alone; her husband was the driver. The jury found that the husband and the driver of the other vehicle were both negligent and a judgment was entered in favor of the wife against the other driver. On appeal, the other driver contended that he was entitled to judgment as a matter of law based on contributory negligence – *i.e.*, the negligence of the husband imputed to the wife as owner of the van. The Court of Special Appeals held that the jury could have found that the spouses were in fact co-owners of the vehicle and, under the rationale of *Stroh*, the trial court was not obligated to grant judgment in the other driver's

19

favor under the imputed negligence doctrine, even if the husband-driver were himself negligent in his operation of the van.

Thus, in dealing with the doctrine of imputed negligence, Maryland appellate courts have recognized that its premise – owner control – is entirely fictional in the context of automobile torts, noted that certain applications of the doctrine lead to results at odds with its original purpose, and have circumscribed its reach by creating an exception (does not apply to a co-owner) and enlarging the breadth of that exception (need not be on the title to be a co-owner).

*Limitation and Abrogation of the Doctrine in Other Jurisdictions*

Courts in other states limited or abrogated the doctrine based upon similar criticisms. *See* Annotation, *Fact that Passenger in Negligently Operated Motor Vehicle Is Owner as Affecting Passenger's Liability to or Right Against Third Person-Modern Cases*, 37 ALR 4th 565. States that have limited or abrogated the doctrine of imputed negligence entirely include Arizona, Illinois, Kansas, Louisiana, Michigan, Minnesota, Nebraska, New York, North Dakota, Oregon, Pennsylvania, South Dakota, Tennessee, West Virginia, and Wyoming. *Id.* at 570.

Similarly, the authors of the second and third Restatements of Torts have rejected the "both ways" theory and would not apply the doctrine of imputed negligence to establish a defense of contributory negligence in an automobile tort case. *See* Restatement 2d of Torts, §485, *comment a* ("The rule stated in this Section rejects, except as indicated by the

20

reference to other Sections, the doctrine of "imputed negligence …");[19] Restatement 3rd of Torts §5, *comment c* ("If a husband is injured in an automobile accident while a passenger in a car driven by his wife, the effect that the wife's negligence has on the husband's ability to recover from another driver should not depend on whether the wife or husband owns the family automobile.").

### 3. Summary and Application to this Case

In the context of the operation of the modern automobile, the doctrine of imputed negligence has lost much of its grounding. Although the "both ways" theory that applies the doctrine to impute contributory negligence to an innocent owner-passenger is a logical extension of the doctrine, it bears no relation to the original purpose of the doctrine. Thus, with respect to the application of the doctrine to hold an innocent owner-passenger contributorily negligent and defeat a claim against a negligent third party, we agree with the Minnesota Supreme Court that "the time has come to discard this rule which is defensible only on grounds of its antiquity."[20] We will no longer indulge a presumption that an owner-passenger who was injured in an automobile accident had operational control over a permissive driver of the vehicle and is therefore responsible for any negligence of the driver.

---

[19] The second Restatement provides for imputation of negligence when there is a genuine agency relationship between owner and driver. *See* Restatement 2d of Torts, §491; *Slutter v. Homer*, 244 Md. 131, 139-40 (1966).

[20] *Weber v. Stokely-Van Camp, Inc*., 144 N.W.2d 540, 545 (Minn. 1966).

This does not mean that an owner-passenger cannot be contributorily negligent. Rather, we are simply dispensing with the presumption that an injured owner-passenger is contributorily negligent because the driver is negligent. There may be any number of ways in which an owner-passenger's own actions or omissions could be a proximate cause of an accident, not the least of which could be wresting control of the steering wheel from the driver.

Because the courts below based their decisions on application of the doctrine of imputed negligence to hold that Ms. Worsley was contributorily negligent, we must vacate the judgment in this case. To the extent that this Court's earlier cases are inconsistent with this opinion,[21] they are overruled. Our holding extends no further than that. Mr. Mintiens argues that if we abrogate imputed contributory negligence, we must abrogate the doctrine of imputed negligence in all instances. However, there is no need to discard the doctrine in its entirety to decide this case. We decline to do so. There may be occasions when the doctrine still serves its original purpose of spreading risk and compensating an innocent injured party. Nor, in an era in which it is anticipated that many motor vehicles will soon operate autonomously without human drivers, can we anticipate the felt necessities of the future.

---

[21] See note 9 above.

## III

## Conclusion

For the reasons explained above, we hold that the doctrine of imputed negligence does not apply to deem an owner-passenger of a motor vehicle contributorily negligent based on the negligence of a permissive driver of the owner-passenger's vehicle and bar the owner-passenger from recovering compensation from a negligent third party.

Our decision is not a rebuke of the lower courts in this case. In carrying out our role of developing the common law of Maryland, we sometimes find ourselves, as here, in the position of reversing a lower court that has faithfully applied existing precedent or a logical extension of existing precedent. *See, e.g., Boblitz v. Boblitz*, 296 Md. 242 (1983) (abrogating common law doctrine of interspousal immunity and reversing trial court decision in automobile tort case based on that doctrine); *Pearson v. State*, 437 Md. 350 (2014) (overruling existing precedent concerning voir dire questions and reversing judgment where trial court followed existing precedent in formulating voir dire questions); *Roy v. Dackman*, 445 Md. 23 (2015) (reversing trial court decision that applied recent appellate precedent directly on point concerning admissibility of expert testimony in lead paint case). The District Court and the Circuit Court in this case faithfully applied our existing precedent. That precedent is obsolete. It is our responsibility to say so.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**

23